Jessica LOMAYESTEWA, Movant,

v.

OUR LADY OF MERCY HOSPITAL (Religious Sisters of Mercy of the Union of the United States of America), Respondent.

No. 78-SC-536-D.

Supreme Court of Kentucky.

Oct. 9, 1979.

Rehearing Denied Nov. 20, 1979.

John T. Mandt, Mandt, McEnroe & Polk, Somerset, for movants.

James M. Frazer, Frazer & Gibson, Monticello, for respondents.

Charles E. Moore, Moore, Moore & Hager, Owensboro, for movant.

Clarence McCarroll, Bartlett, McCarroll & Nunley, Owensboro, for respondent.

REED, Justice.

The movant, Jessica Lomayestewa, a 28-year-old Navajo Indian, is a victim of Grand Mal epilepsy and emotional derangement. While a patient at respondent, Our Lady of Mercy Hospital, she either jumped or fell through a window in a room she was occupying in the psychiatric ward of the hospital. Her fall to the ground produced personal injuries and she sued the hospital for these damages.

At the trial, the judge submitted to the jury the issues of the hospital's negligence and Jessica's contributory negligence. The jury returned a general verdict in favor of the hospital. From a judgment in accord-ance with the verdict, Jessica appealed to the Court of Appeals but the judgment was affirmed. We granted discretionary review and now reverse the decision of the Court of Appeals and the judgment of the trial court with direction that Jessica's motion for judgment n. o. v. be sustained and that judgment be entered in her favor against the hospital on the issue of liability and that a new trial by jury be limited to the issue of damages.

■ The evidence established that Jessica was emotionally deranged and this condition was well known to the hospital at the time she was accepted as a patient. The evidence also clearly established that the room which she occupied at the time of the incident complained of had no detention screen or its equivalent as required in the operation of hospital psychiatric wards by Kentucky Administrative Regulation No. 902 KAR 20.010. It appears that Jessica, a college student, became violent and uncontrollable in her dormitory and was first admitted to Room 222, a so-called "seclusion room" in the psychiatric ward. Later, she was moved to Room 218 in the same ward for accessibility to oxygen. Apparently she became somewhat combative and was placed on a bed with "Posey restraints." Posey restraints are described in the evidence as a restraint-type vest which are in the nature of a modified strait jacket. She was left alone and somehow extricated herself from the restraints, got to the window and jumped out. There was no detention screen on the window of Room 218 as required by the statutorily authorized regulation. Although the hospital sought to inject the consideration that the condition of the window was "equivalent to" the required detention screen, the administrator of the hospital candidly testified that no detention screen was on the window, that the window was latched from the inside by a normal latch and could be raised easily if it was unlocked. The other excuse offered by the hospital was that periodic inspections by governmental officials had not raised any question as to the compliance with the regulation. Our review of the record con-

vinces us that it is crystal clear there was a violation of the regulation and, of course, no inspector had any authority to relieve the hospital of compliance with the statutory standard.

Having determined there was a violation of the statutory standard, we have no trouble in determining that Jessica was one of the class of persons intended to be protected by the regulation, and her jump from the window was an event that the regulation was designed to prevent. Thus any question of causation presents no impediment to the hospital's liability.

Our analysis of the case convinces us that the critical issue in the case is whether the defense of contributory negligence, including the element of assumption of risk, is available to the hospital under the factual situation presented.

"Where the defendant's negligence consists of the violation of a statute, the traditional view has been that the plaintiff may still assume the risk . . . . There have been certain statutes, however, which clearly are intended to protect the plaintiff against his own inability to protect himself, including his own lack of judgment or inability to resist various pressures. Such, for example, are the child labor acts, and various safety statutes for the benefit of employees, . . . Since the fundamental purpose of such statutes would be defeated if the plaintiff were permitted to assume the risk, it is generally held that he cannot do so, either expressly or by implication." Prosser, *Law of Torts*, Sec. 68 at 453 (4th ed. 1971) (footnotes omitted).

As early as 1913, this court held in *Louisville H. & St. L. Ry. Co. v. Lyons*, 155 Ky. 396, 159 S.W. 971, that a statute prohibiting the employment of children under 16 in certain employments in effect abolished the defenses of contributory negligence including the element of assumption of risk in actions by children injured while employed in such occupations in contravention of the statute. Whether the present regulation which establishes standards for the safety of mental patients in psychiatric wards precludes the defense of contributory negligence is a matter of the legislative purpose which the court finds in the statute.

"If it is found to be intended merely to establish a standard of ordinary care for the protection of the plaintiff against a risk, his contributory negligence with respect to that risk will bar his action, as in the case of common law negligence. But there are certain unusual types of statutes, such as child labor acts, those prohibiting the sale of dangerous articles such as firearms to minors, the Federal Safety Appliance and Boiler Inspection Acts, factory acts for the protection of workmen, or railway fencing or fire statutes which have been construed as intended to place the entire responsibility upon the defendant, and to protect the particular class of plaintiffs against their own negligence. In such a case, as in the case of the statutes involving the age of consent, the object of the statute itself would be defeated if the plaintiff's fault were a defense, and the courts refuse to recognize it." Prosser, *Law of Torts*, Sec. 65 at 425, 426 (4th ed. 1971) (footnotes omitted).

We find nothing in our case law which indicates a contrary view. In our view, the very purpose of the statutory regulation would be completely emasculated if the plaintiff's contributory negligence, including the element of assumption of risk, was permitted to defeat his action against a violator of the statutory regulation. It is our conclusion, therefore, that the trial judge erred in submitting the elements of causation and contributory negligence to the jury. The movant made timely requests for a directed verdict on the issue of liability. The movant's motion for judgment n. o. v. should have been granted. We, therefore, direct that the trial court enter judgment that the respondent is liable to the movant. The issue of damages only shall be tried by a jury on a retrial.

The decision of the Court of Appeals and the judgment of the Daviess Circuit Court are reversed and the cause is remanded to the Circuit Court for further proceedings consistent with this opinion.

All concur.