**Donna HARGIS, Individually; Donna Hargis, as Administratrix of the Estate of Darrell Ruben Hargis, Deceased; Zachary Hargis, A Minor, Through Donna Hargis as Next Friend; and Christian Hargis, A Minor, Through Donna Hargis as Next Friend Appellants,**

v.

**Allen R. BAIZE, D/B/A Greenville Log and Lumber; and Baize Forest Products, Inc. Appellees**

No. 2002–SC–0969–DG.

Supreme Court of Kentucky.

May 19, 2005.

---

Jonathan S. King, Paxton & King, PLC, Central City, Counsel for Appellants.

Alice Barns Herrington, Elizabeth U. Mendel, Woodward, Hobson & Fulton, LLP, Louisville, Counsel for Appellees.

Opinion of the Court by Justice COOPER.

Appellee, Allen R. Baize, owned a lumber yard and sawmill in Muhlenberg County, Kentucky, a sole proprietorship known as Greenville Log and Lumber Co. ("Greenville"). Baize[1] hired Darrell Ruben Hargis on an independent contractor basis to haul logs to and from Greenville and various other locations for which services Baize paid Hargis by the board-feet hauled. Hargis owned his own tractor (truck) but hauled the logs on a semitrailer owned by Baize. Baize claims he rented the trailer to Hargis and deducted the rentals from Hargis's weekly paycheck but produced no records to prove that assertion. Hargis worked exclusively for Baize during the last six months of his life.

On November 24, 1998, Baize dispatched Hargis to Campbellsville, Kentucky, to pick up a load of logs that Baize had purchased from Whitney & Whitney Lumber Co. Presumably, Whitney's employees loaded the logs. Upon returning to Greenville, Hargis began releasing the binders on the logs in preparation for unloading by one of Baize's forklift drivers. Baize required all truck drivers, even his own employees, to release the binders on their loads, and then to move to a position at least two truck lengths in front of the truck so as to be in full view of the forklift operator while the logs were being unloaded. Baize owned eight forklifts, and three or four of them were in the vicinity of the unloading area when Hargis parked his truck. Steven Staples, a Baize employee, was standing by in his forklift waiting for Hargis to release the binders so that he could unload the logs. Unfortunately, when Hargis released the binders, a large log rolled off the trailer and struck and killed him.

Hargis's widow, individually, as administratrix of his estate, and as next friend of their two minor children, brought this action against Baize in the Muhlenberg Circuit Court alleging that the fatal accident was caused by Baize's failure to comply with Kentucky Administrative Regulation 803 KAR 2:317 § 2 (now § 3), promulgated pursuant to the Kentucky Occupational Safety and Health Act (KOSHA), which incorporates by reference 29 CFR § 1910.265(d)(1)(i)(b) and (c), promulgated pursuant to the federal Occupational Safety and Health Act (OSHA). Those regulations provide:

(d) Log handling, sorting, and storage—

(1) Log unloading methods, equipment, and facilities—

---

1. References to acts or omissions by Baize include those of his management or supervisory employees.

(i) Unloading methods.

. . .

(b) Binders on logs shall not be released prior to securing with unloading lines or other unloading device.

(c) Binders shall be released only from the side on which the unloader operates, except when released by remote control devices or except when person making release is protected by racks or stanchions or other equivalent means.

In the context of our facts, "securing" the logs with an unloading device meant using the forks of the forklift to stabilize the logs to keep them from rolling off the truck when the binders were released. Baize admits that it was not his company's policy to comply with this regulation. Baize's former safety officer, Randahl Matheny, testified in a discovery deposition that an insurance representative visited the site two weeks before Hargis was killed and recommended implementation of the securing procedures required by the KOSHA regulations. According to Matheny, Delbert Knight, Baize's son-in-law and operations manager, rejected the recommendation even though Knight, himself, had been recently injured in a similar accident. A state investigative report prepared after Hargis's death also recommended implementation of the securing procedure required by KOSHA. When confronted with this recommendation, the only response of Robbie Baize, Baize's son and sales manager, was: "Not implemented."

Following completion of discovery, Appellants moved for partial summary judgment on the issue of Baize's negligence, claiming that the violation of the KOSHA regulations was negligence per se and created a private cause of action for wrongful death; thus, the jury should be instructed only on Hargis's contributory fault, if any,

KRS 411.182, and damages. Baize also moved for summary judgment, claiming that the violation of the regulations did not create a private cause of action in favor of Appellants, and that his only duty to an independent contractor such as Hargis was to warn him of any hidden dangers on the premises. *Ralston Purina Co. v. Farley*, 759 S.W.2d 588, 589 (Ky.1988). The trial court agreed with Baize and also construed a "Release" signed by Hargis on April 10, 1998, to be a valid contract exculpating Baize from any liability for damages to Hargis caused by Baize's negligence. Accordingly, the trial court overruled Appellants' motion for partial summary judgment and entered a summary judgment in favor of Baize. The Court of Appeals affirmed. We granted discretionary review and now reverse the Court of Appeals and remand this case to the trial court with directions to vacate the summary judgment granted to Baize, grant a partial summary judgment to Appellants on the issue of Baize's liability, and conduct further proceedings as necessary.

## I. VIOLATION OF KOSHA REGULATION.

KRS 446.070 provides:

A person injured by the violation of any *statute* may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation.

(Emphasis added.) The statute creates a private right of action in a person damaged by another person's violation of any statute that is penal in nature and provides no civil remedy, if the person damaged is within the class of persons the statute intended to be protected. *State Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 118 (Ky.1988); *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky.1985); *Hackney v.*

*Fordson Coal Co.,* 230 Ky. 362, 19 S.W.2d 989, 990 (1929).

A. *Violation of administrative regulation.*

■ In *Rietze v. Williams,* 458 S.W.2d 613 (Ky.1970), our predecessor court held that because KRS 13.081 provided that all administrative regulations "have the force and effect of law," they had the same effect as statutes or ordinances enacted directly by the General Assembly; thus, the violation of an administrative regulation is the equivalent of a violation of a statute, and a person injured by a violation may recover from the violator such damages as he or she sustained by reason of the violation. *Id.* at 617. However, KRS 13.081, the foundation for that holding, was subsequently repealed, 1974 Ky. Acts, ch. 73, § 7, and has not been reenacted or replaced by a general statute of similar import. In *Centre College v. Trzop,* 127 S.W.3d 562 (Ky.2003), we overruled *Rietze* to the extent that it relied on KRS 13.081 "for the proposition that KRS 446.070 allows recovery for violation of an administrative regulation." *Id.* at 566.

In *Lomayestewa v. Our Lady of Mercy Hospital,* 589 S.W.2d 885 (Ky.1979), the Court equated the violation of an administrative regulation with the violation of a statute.

> [I]t is crystal clear there was a violation of the regulation and, of course, no inspector had any authority to relieve the hospital of compliance with the statutory standard.
>
> Having determined there was a violation of the statutory standard, we have no trouble in determining that Jessica was one of the class of persons intended to be protected by the regulation, and her jump from the window was an event that the regulation was designed to prevent.

*Id.* at 887. It is unclear whether the violation in *Lomayestewa* occurred prior to the repeal of KRS 13.081.

In *Britton v. Wooten,* 817 S.W.2d 443 (Ky.1991), the violation clearly occurred after the repeal of KRS 13.081; nevertheless, the Court reiterated that "violations of administrative regulations, like statutory violations, constitute negligence, per se, and the basis for liability if found to be a substantial factor in causing the result." *Id.* at 447 (citing only *Rietze* and *Higgins Inv., Inc. v. Sturgill,* 509 S.W.2d 266 (Ky. 1974), another case in which the violation occurred prior to the repeal of KRS 13.081). Because KRS 446.070 was not mentioned in any of the *Rietze* line of cases, it is unclear whether the decisions were premised upon that statute, as this Court has previously stated. *Centre College,* 127 S.W.3d at 567 (concluding that KRS 446.070 allows for a private right of action only for the violation of regulations that are consistent with their enabling legislation). Another possibility is that the *Lomayestewa* and *Britton* Courts were recognizing a common law cause of action based on the violation of an administrative regulation, assuming that such a common law cause of action exists. *Cf. Phoenix Amusement Co. v. White,* 306 Ky. 361, 208 S.W.2d 64, 67 (1948) (suggesting but not deciding that the violation of an administrative regulation would give rise to a common law right of action if the injury was of a type that the regulation was designed to prevent).

We need not decide here whether such a common law cause of action exists; for KRS 338.031(1)(b), the statute under which the KOSHA regulations were promulgated, specifically provides that "[e]ach employer ... [s]hall comply with occupational safety and health standards promulgated under this chapter." Since those standards are promulgated in the regulations

adopted by the Kentucky Occupational Safety and Health Standards Board, KRS 338.051(3); KRS 338.061(1), the violation of a KOSHA regulation would constitute a violation of KRS 338.031(1)(b), thus triggering the right of action created by KRS 446.070.

### B. Incorporation of OSHA standards by reference.

■ As previously noted, the regulation at issue in this case, 803 KAR 2:317 § 2 (now § 3), incorporates by reference the standards set forth in 29 CFR § 1910.265(d)(1)(i)(b) and (c). KRS 13A.2267(1)(a) prohibits the incorporation by reference into a Kentucky administrative regulation of a federal regulation that imposes specific procedures, standards, conditions, or restrictions on regulated entities. On the other hand, KRS 338.061(2) specifically permits incorporation by reference of established federal standards into KOSHA regulations. Since KRS 13A.2267(1)(a) deals with incorporation by reference in a general way and KRS 338.061(2) in a specific way, the latter controls. *Travelers Indem. Co. v. Reker*, 100 S.W.3d 756, 763 (Ky.2003); *Commonwealth v. Phon*, 17 S.W.3d 106, 107–08 (Ky.2000); *DeStock # 14, Inc. v. Logsdon*, 993 S.W.2d 952, 959 (Ky.1999).

### C. Carman v. Dunaway distinguished.

Baize's reliance on *Carman v. Dunaway Timber Co., Inc.*, 949 S.W.2d 569 (Ky. 1997), is misplaced. While the accident in *Carman* occurred under facts almost identical to those in this case, the plaintiff in *Carman* was not within the class of persons that KOSHA intended to be protected. Carman was a private businessman, an independent logger, who was on Dunaway's premises for the purpose of selling his own logs to Dunaway. In declining to apply *Teal v. E.I. DuPont de Nemours & Co.*, 728 F.2d 799 (6th Cir.1984), which extended OSHA's coverage to employees of independent contractors who work at another employer's workplace, we noted that Carman was "neither an independent contractor nor an employee thereof." *Carman*, 949 S.W.2d at 571. Contrary to Appellant's assertion, we did not thereby adopt *Teal;* there was no need to do so because the holding in *Teal* did not apply to the facts in *Carman*. The holding in *Teal*, however, does apply to the facts of this case.

### D. Teal adopted.

If this were a workers' compensation claim, it would be a close question whether Hargis was an employee or an independent contractor under the test reiterated most recently in *Uninsured Employers' Fund v. Garland*, 805 S.W.2d 116 (Ky.1991):

> The proper legal analysis consists of several tests from *Ratliff [v. Redmon*, 396 S.W.2d 320 (Ky.1965) ] and requires consideration of at least four predominant factors: (1) the nature of the work as related to the business generally carried on by the alleged employer; (2) the extent of control exercised by the alleged employer; (3) the professional skill of the alleged employee; and (4) the true intent of the parties.

*Id.* at 118–19. In addition to the facts that Baize dispatched Hargis to pick up Baize's logs and transport them to Baize's place of business on a semi-trailer owned by Baize, are the facts that Hargis had worked exclusively for Baize for six months immediately preceding the accident and, though paid by the board-feet hauled, was paid on a weekly basis, not at the conclusion of each individual trip. Nevertheless, the parties *agree* that Hargis was an independent contractor (for otherwise, Appellant's complaint would have been summarily dismissed as barred by KRS 342.690(1), the "exclusive remedy" provision of the Workers' Compensation Act).

■ Thus, we now reach the issue that we did not reach in *Carman, i.e.,* whether KOSHA's protections extend to workers on the job site other than direct employees of the owner or other person in control of the job site. We conclude, as did the Sixth Circuit in *Teal,* that KOSHA's protections extend to any employee, including an employee of an independent contractor, who is performing work at another employer's workplace. We adopt *Teal*'s analysis of the relevant OSHA provisions as our construction of the same provisions replicated in KOSHA, *viz:*

Under the Act, an employer's duty is two-fold:

Each employer—

(1) Shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;

(2) Shall comply with Occupational Safety and Health standards promulgated under this chapter.

29 U.S.C. Sec. 654(a) [KRS 338.031(1)]. The first duty is a "general duty" imposed on an employer to protect its employees from hazards that are likely to cause death or serious bodily injury. The second duty is a "specific duty" imposed on employers to comply with the OSHA regulations....

... The general duty clause was intended by Congress [the General Assembly] to cover unanticipated hazards; Congress [the General Assembly] recognized that it could not anticipate all of the potential hazards that might affect adversely the safety of workers. Accordingly, it enacted the general duty clause to cover serious hazards that were not otherwise covered by specific regulations. Pursuant to Sec. 654(a)(1) [KRS 338.031(1)(a)], every employer owes a duty of reasonable care to protect his employees from recognized hazards that are likely to cause death or serious bodily injury. The protection from exposure to serious hazards is the primary purpose of the general duty clause, and every employer owes this duty regardless of whether it controls the workplace, whether it is responsible for the hazard, or whether it has the best opportunity to abate the hazard. In contrast, Sec. 654(a)(2) [KRS 338.031(1)(b)] is the specific duty provision. The class of employers who owe a duty to comply with the OSHA regulations is defined with reference to control of the workplace and opportunity to comply with the OSHA regulations. Accordingly, an employers' [sic] responsibilities under the Act depend upon which duty provision the employer is accused of breaching. Similarly, the class of persons for whom each of these duty provisions was enacted must be determined with reference to the particular duty in dispute.

In this case, Dupont [Baize] is accused of breaching the specific duty imposed on employers by Sec. 654(a)(2)[KRS 338.031(1)(b)]. Accordingly, ... reliance on the plain language of the general duty clause is misplaced. The very narrow question on appeal does not concern the scope of an employer's general duty to protect employees from exposure to recognized hazards, but rather, the scope of an employer's duty to comply with the specific OSHA regulations. If the special duty provision is logically construed as imposing an obligation on the part of employers to protect all of the employees who work at a particular job site, then the employees of an independent contractor who work on the premises of another employer must be considered members of the class that

Sec. 654(a)(2) [KRS 338.031(1)(b)] was intended to protect. In other words, one cannot define the scope of an employer's obligation under Sec. 654(a)(2) [KRS 338.031(1)(b)] as including the protection of another's employees and, at the same time, claim that these "other" employees are unintended beneficiaries.

We believe that Congress [the General Assembly] enacted Sec. 654(a)(2) [KRS 338.031(1)(b)] for the special benefit of *all* employees, including the employees of an independent contractor, who perform work at another employer's workplace. The specific duty clause represents the *primary* means for furthering Congress' purpose of assuring "so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. Sec. 651(b). (Emphasis added). The broad remedial nature of the Occupational Health and Safety Act of 1970 is the Act's primary characteristic. Consistent with the broad remedial nature of the Act, we interpret the scope of intended beneficiaries of the special duty provision in a broad fashion. In our view, once an employer is deemed responsible for complying with OSHA regulations, it is obligated to protect every employee who works at its workplace.

*Teal*, 728 F.2d at 803–05 (internal footnotes and citations omitted). *Cf. Brennan v. Occupational Safety and Health Review Comm'n*, 513 F.2d 1032, 1038 (2d Cir.1975) ("In a situation where, as here, an employer is in control of an area, and responsible for its maintenance, we hold that to prove a violation of OSHA the Secretary of Labor need only show that a hazard has been committed [sic] and that the area of the hazard was accessible to the employees of the cited employer *or those of other employers engaged in a common undertaking.*" (Emphasis added.)).

Similar to the "purpose" provision in 29 U.S.C. § 651(b), KRS 338.011 provides:

> [I]t is the purpose and policy of the Commonwealth of Kentucky to promote the safety, health and general welfare of its people by preventing any detriment to the safety and health of all employees, both public and private, covered by this chapter, arising out of exposure to harmful conditions and practices at places of work . . . .

Baize asserts that even if *Teal* would apply to Hargis if he were an employee of an independent contractor, it does not apply to him because Hargis was, in fact, the independent contractor. As illustrated by the analysis in *Teal,* to draw such a distinction would be ludicrous. Except for providing his own truck, Hargis was performing the same work duties and was exposed to the same work hazards as Baize's own truck-driver employees. As noted by Appellants, if Hargis had incorporated himself and paid himself a salary, as do many independent truckers, he would have been an "employee of an independent contractor." He is no less entitled to KOSHA's protections because, technically, he was self-employed. *See Angel v. United States*, 775 F.2d 132, 133, 135, 144 (6th Cir.1985) (treating a self-employed independent subcontractor as both an employer and an employee under *Teal*); *Arrington v. Arrington Bros. Const., Inc.*, 116 Idaho 887, 781 P.2d 224, 228 (1989) (adopting *Teal*'s reasoning verbatim and holding general contractor liable for independent electrical subcontractor's injuries caused by general contractor's violation of OSHA regulation where subcontractor testified he was the "primary employee" of his unincorporated electrical business).

Baize asserts that the Sixth Circuit subsequently departed from *Teal* in *Ellis v.*

*Chase Communications, Inc.,* 63 F.3d 473 (6th Cir.1995). We disagree. In *Ellis,* an employee of an independent painting contractor fell to his death from a communications tower owned by Chase Communications after he unbuckled his safety harness in order to change positions. The Court explained that *"Teal . . . merely extends to employees of an independent contractor the same duty owed to one's own employees." Ellis,* 63 F.3d at 477–78. The premise for *Teal* was that the responsible employer had control of the workplace and, therefore, an opportunity to assure compliance with OSHA regulations. *Teal,* 728 F.2d at 804. In *Ellis,* however, the tower was not "a regular job site on which Chase had a duty to protect its own employees." *Ellis,* 63 F.3d at 478.

E. *KRS 338.021(2).*

▮▮▮▮ Finally, Baize asserts that KRS 338.021(2) precludes a cause of action premised upon a violation of KOSHA. KRS 338.021(2) provides:

*Nothing in this chapter* shall be construed to supersede or in any manner affect any workers' compensation law or to enlarge or diminish or affect in any manner the common law or statutory rights, duties, or liabilities of employers or employees, under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of employment.

(Emphasis added.) The Court of Appeals has interpreted the statute to preclude an action by an employee against an employer premised upon a violation of KOSHA. *Stinnett v. Buchele,* 598 S.W.2d 469, 471 (Ky.App.1980); *Childers v. Int'l Harvester Co.,* 569 S.W.2d 675, 677 (Ky.App.1977). We agree that a violation of KOSHA does not affect the exclusive remedy provision of the Workers' Compensation Act. KRS 342.690(1). We also agree that KOSHA, itself, does not create a private right of action for a violation of one of its provisions. However, a violation of KOSHA is actionable by a person for whose benefit it was enacted if the right of action arises from a source created separately from and independently of KOSHA. *Ellis,* 63 F.3d at 478 (construing 29 U.S.C. § 653(b)(4), which is replicated by KRS 338.021(2)). Because a violation of KOSHA also constitutes a violation of KRS 338.031(1)(b), KRS 446.070, which was enacted eighty years prior to KOSHA, 1892 Ky. Acts, ch. 107, p. 372, § 21, is a separate and independent source creating a right of action in favor of a person damaged by a violation of KOSHA if that person is within the class intended to be protected by KOSHA. It is not KOSHA, but KRS 446.070, that authorizes Appellants to bring this private civil action for damages. *Cf. Reker,* 100 S.W.3d at 762 ("[I]t is not KRS 304.12–230, but KRS 446.070, that authorizes a private civil action for damages caused by a violation of the UCSPA."). KRS 446.070 converts the standard of care required by the violated statute into a statutory standard of care for the negligence claim, the violation of which is negligence per se. *Real Estate Marketing, Inc. v. Franz,* 885 S.W.2d 921, 926–27 (Ky.1994); *Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell,* 736 S.W.2d 328, 333 (Ky. 1987); *Stivers v. Ellington,* 140 S.W.3d 599, 601 (Ky.App.2004).

KRS 342.690(1) precludes application of KRS 446.070 to conduct within the purview of the Workers' Compensation Act. *Reker,* 100 S.W.3d at 763; *Simmons v. Clark Constr. Co.,* 426 S.W.2d 930, 932–33 (Ky. 1968). Thus, if Hargis had been a direct employee of Baize, this action would be precluded; however, Appellants would have been entitled to death benefits under KRS 342.730(3) without regard to any contributory fault on Hargis's part. Since Hargis was an independent contractor,

though self-employed on premises controlled by Baize, his death was not within the purview of the Workers' Compensation Act. *Fields v. Twin City Drive–In,* 534 S.W.2d 457, 459 (Ky.1976). Thus, this civil action is not precluded; but Hargis's alleged contributory fault, if any, will be a factor for the jury to consider in determining causation and whether any damages should be reduced on the basis of comparative fault. KRS 411.182; *cf. Durham v. Maratta,* 302 Ky. 633, 195 S.W.2d 277, 279 (1946) (holding, in a case where defendant's negligence was premised upon the violation of an ordinance, that plaintiff's contributory negligence was an issue for the jury to decide).

## II. ONLY SUBSTANTIAL FACTOR.

■■■■■ The violation of a statute does not necessarily create liability. The statute must have been specifically intended to prevent the type of occurrence that took place, and the violation must have been a substantial factor in causing the result. *Isaacs v. Smith,* 5 S.W.3d 500, 502 (Ky. 1999). Baize claims the accident occurred because of Hargis's own negligence in permitting his truck to be overloaded so as to increase the amount of board-feet hauled and, thus, his remuneration for the trip; and that such was the only substantial factor in causing his injuries.[2] But even if Hargis's truck were overloaded, a jury could conclude that Baize's compliance with the applicable KOSHA regulations would have prevented Hargis's death and, conversely, that his failure, nay refusal, to comply with those regulations was a sub-

stantial factor in causing that death. "[I]n many negligence per se cases, the statute or ordinance violated was intended to protect individuals from their own carelessness in certain dangerous situations." William S. Cooper, Comment, *Negligence Per Se as Proximate Cause of Injury in Fall–Down Cases,* 57 Ky. L.J. 277, 280 (1968–69). The issue of comparative fault in this case is one to be decided by a properly instructed jury.

## III. EXCULPATORY AGREEMENT.

■■■ On April 10, 1998, Hargis signed the following document prepared by Baize:

### RELEASE

It is hereby agreed and acknowledged that I am a self-employed independent contractor. Therefore, I am not required to carry Worker's compensation according to Kentucky Law. I accept responsibility for my own property and person and *release* ALLEN BAIZE, d/b/a GREENVILLE LOG & LUMBER CO., BAIZE FOREST PRODUCTS, INC., GRAPEVINE LUMBER CO., A R LUMBER CO., AND JORDAN LOGGING, INC., *and forever hold him harmless for any property damage/bodily injury sustained by me or any other person I authorize to be on the working premises while performing services for said contractor.* I agree that my relationship with him will be strictly as a subcontractor and not an employee, which makes me ineligible for any employee benefits under said con-

---

2. Baize does not claim that Hargis was also negligent per se in releasing the binders on his load of logs while they were unsecured. KRS 338.031(2) ("Each *employee* shall comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this chapter which are applicable to his own actions and conduct.")

(Emphasis added.)); *Angel,* 775 F.2d at 144. Hargis, however, had no control over Baize's forklift drivers who, pursuant to Baize's operating procedures, were not allowed to secure his load while the binders were being released. Thus, he was faced with the Hobson's choice of either releasing the binders or leaving the load on the trailer.

tractor's insurance programs or state requirements.

ACKNOWLEDGED RECEIVING A COPY OF THIS RELEASE ON 4/10/98 AND AM IN FULL AGREEMENT WITH ITS CONDITIONS.

/s/ Darrell Hargis

(Emphasis added.)

This document does not exculpate Baize from liability for Hargis's death because (1) the "Release" does not explicitly purport to release Baize from liability for his own negligence and does not identify the type of injury or damage for which liability is being released; and (2) as applied to the facts of this case, the "Release" purports to transfer to Hargis duties that were assigned to Baize by a safety statute.

**■** An exculpatory contract for exemption from future liability for negligence, whether ordinary or gross, is not invalid per se. *Cobb v. Gulf Refining Co.*, 284 Ky. 523, 145 S.W.2d 96, 99 (1940); *Greenwich Ins. Co. v. Louisville & N.R. Co.*, 112 Ky. 598, 66 S.W. 411, 413 (1902); *Jones v. Hanna*, 814 S.W.2d 287, 289 (Ky. App.1991); *Louisville Bear Safety Serv., Inc. v. S. Cent. Bell Tel. Co.*, 571 S.W.2d 438, 440 (Ky.App.1978); Restatement (Second) of Contracts § 195(2) cmt a (1981); Restatement (Second) of Torts § 496B cmt a (1965). However, such contracts are disfavored and are strictly construed against the parties relying upon them. *City of Hazard Mun. Hous. Comm'n v. Hinch*, 411 S.W.2d 686, 689 (Ky.1967); *Cobb*, 145 S.W.2d at 99. The wording of the release must be "so clear and understandable that an ordinarily prudent and knowledgeable party to it will know what he or she is contracting away; it must be unmistakable." 57A Am.Jur.2d, *Negligence* § 52 (2004) (citations omitted). Specifically, a preinjury release will be upheld only if (1) it explicitly expresses an intention to exonerate by using the word "negligence;" or

(2) it clearly and specifically indicates an intent to release a party from liability for a personal injury caused by that party's own conduct; or (3) protection against negligence is the only reasonable construction of the contract language; or (4) the hazard experienced was clearly within the contemplation of the provision. *Id.* at § 53 (citations omitted). "Thus, an exculpatory clause must clearly set out the negligence for which liability is to be avoided." *Id.* (citations omitted).

The "Release" signed by Hargis satisfies none of these alternatives. It does not mention the word "negligence" and does not explicitly release Baize from liability for personal injury caused by his own conduct. Nor is protection of Baize against his own acts of negligence the only reasonable construction of the contract language. The language could reasonably be construed to release Baize only from workers' compensation liability to Hargis and any of his employees or subcontractors for injuries caused by their own negligence, and vicarious liability for damages caused by Hargis to one of his subcontractors. Finally, there is no reason to believe that injury or death resulting from a failure to secure a load of logs before the binders were released was specifically within the contemplation of the provision.

**■** A party cannot contract away liability for damages caused by that party's failure to comply with a duty imposed by a safety statute. *Boyer v. Atchison, T. & S.F. Ry. Co.*, 34 Ill.App.2d 330, 181 N.E.2d 372, 375 (1962) (exculpatory provision in free pass to use railroad did not relieve railroad of liability for injury caused by its violation of Safety Appliance Act); *D.H. Davis Coal Co. v. Polland*, 158 Ind. 607, 62 N.E. 492, 495–96 (1902) (provision in contract of employment by which employee relieved employer of duty to provide safe-

guards required by statute held unenforceable); *Warren City Lines, Inc. v. United Refining Co.*, 220 Pa.Super. 308, 287 A.2d 149, 151 (1971) (exculpatory clause in contract for lease of gasoline pump did not relieve lessor of liability for explosion caused by lessor's violation of safety regulation: "Any attempt by a negligent party to exculpate himself for a violation of a statute intended for the protection of human life is invalid."); *Metz v. Medford Fur Foods, Inc.*, 4 Wis.2d 96, 90 N.W.2d 106, 108 (1958) (hold-harmless agreement in contract of sale was unenforceable where damages were caused by seller's violation of statute prohibiting sale of adulterated foods).

Accordingly, we reverse the Court of Appeals and remand this case to the Muhlenberg Circuit Court with directions to vacate the summary judgment granted to Baize, to grant Appellants a partial summary judgment on the issue of Baize's liability, and to conduct further proceedings consistent with this opinion.

LAMBERT, C.J.; GRAVES, SCOTT, and WINTERSHEIMER, JJ., concur.

KELLER, J., dissents by separate opinion, with JOHNSTONE, J., joining that dissenting opinion.

Dissenting Opinion by Justice KELLER.

Because this is a civil action by an employee against an employer and is based on a violation of the Kentucky Occupational Safety and Health Act[1] (KOSHA), it is precluded by KRS 338.021(2), and therefore, I respectfully dissent.

A violation of KOSHA may not be the basis of a civil action by an employee against his or her employer. The Legislature could not have stated it any clearer when it authorized in KRS Chapter 338 the promulgation and adoption of the KOSHA regulations:

> *Nothing in this [C]hapter [338] shall be construed to* supersede or in any manner affect any workers' compensation law or *to enlarge or diminish or affect in any manner the common law or statutory rights, duties, or liabilities of employers or employees*, under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of employment.[2]

This exclusion is even repeated almost verbatim in KOSHA itself.[3] In other words, if a civil action for an employee's injury or death did not exist before the adoption of KOSHA, then KOSHA could not be the basis thereafter for such an action. But the majority opinion has ignored this clear

1.  "An act relating to the safety and health of workers employed within the Commonwealth of Kentucky" was enacted in 1972. 1972 Ky. Acts ch. 251. This Act is commonly known as the Occupational Safety and Health Act of 1972. The Act created the Kentucky Occupational Safety and Health Standards Board, *Id.* § 6, and authorized it to promulgate and adopt "occupational safety and health rules, regulations, [and] standards." *Id.* § 6(c). The promulgated rules, regulations, and standards are found at 803 KAR 2:010–:600 and are commonly referred to as the Kentucky Occupational Safety and Health Standards Act or by its acronym "KOSHA." KOSHA was patterned after its federal counterpart,

the Federal Occupational Safety and Health Act (OSHA).

2.  KRS 338.021(2) (emphasis added).

3.  803 KAR 2:050 § 1(3) ("Nothing in these administrative regulations shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any manner the common law or statutory rights, duties, or liabilities of employees, under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of employment.").

mandate of the Legislature, and a civil action based on a KOSHA violation is exactly what the majority has sanctioned with today's opinion.

To avoid the prohibition of the statute and to reach its desired result, the majority opinion employs the circular reasoning that although the KOSHA provisions themselves do not create a private right of action, violation of those provisions constitutes a violation of KRS 338.031(1)(b),[4] which in turn invokes KRS 446.070,[5] which provides that a "person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation." The majority opinion claims that this "creat[es] a right of action in favor of a person damaged by a violation of KOSHA." The first four words of KRS 338.021(2)—"Nothing in this chapter"—are rendered totally meaningless by this reasoning. Those words, of course, are referring to KRS Chapter 338 and therefore include KRS 338.031(1)(b) and KRS 338.051(3), which specifically authorized[6] the Kentucky Occupational Safety and Health Standards Board to promul-

gate and adopt the KOSHA regulation that was violated and is the basis for Appellants' civil suit against Appellee, Allen Baize, Darrell Hargis's employer for the purpose of KOSHA.

As the majority opinion correctly points out, KRS 446.070 was enacted eighty years prior to the adoption of KOSHA. So what happened between KRS 446.070's enactment in 1892 and now, more than one hundred years later, that gave Appellants a statutory cause of action against Baize? The answer is simple—KOSHA was enacted—and *but for* the enactment of KOSHA, there would be no alleged civil remedy stemming from KRS 446.070. The majority opinion attempts to sidestep this issue by claiming that KRS 446.070 is the source of the right of action and by noting that it is not part of KRS Chapter 338. But this fails to recognize that KRS 446.070 does not allow a cause of action to bootstrap itself into existence. Rather KRS 446.070 only creates causes of action by acting as a channel for the action of other statutes. As such, KRS 446.070 is merely a codification of the common law.[7] The only way

4. KRS 338.031(1)(b)("(1) Each employer:... (b) Shall comply with occupational safety and health standards promulgated under this chapter.").

5. KRS 446.070 ("A person injured by the violation of any statute may recover from the óffender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation.").

6. KRS 13A.120(1)(a) ("An administrative body may promulgate administrative regulations to implement a statute only when the act of the General Assembly creating or amending the statute specifically authorizes the promulgation of administrative regulations or administrative regulations are required by federal law, in which case administrative regulations shall be no more stringent than the federal law or regulations.").

7. *City of Henderson v. Clayton*, 57 S.W. 1, 2 (Ky.1900) ("From time immemorial, where a

statutory duty for the protection of individuals had been violated, an action at common law might be maintained. The common-law rule referred to is thus stated in Com. Dig. tit. 'Action upon Statutes': 'In every case where a statute enacts or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage, or for the recompense of a wrong done to him contrary to the said law.' Another common-law authority thus states the rule: 'Whenever an act of parliament doth prohibit anything, the party grieved shall have an action, and the offender shall be punished at the king's suit. It is written in the hornbook of the law that the public and a party particularly aggrieved may each have a distinct but concurrent remedy for an act which happens to be both a public and a private wrong.' End. Interp. St. § 463. The same common-law rule is laid down in Bish. Noncont. Law, § 133, and in Cooley, Torts, p. 658. It is also recognized in section 466, Ky.

then for a cause of action in this case to exist is that it results indirectly from the existence of KRS 338.031(1)(b), which was enacted long after KRS 446.070. But if the majority opinion is correct, then this means that KOSHA's enactment served to expand a statutory right, specifically the right granted under KRS 446.070, or to expand a right granted under the common law. Yet this is exactly why the cause of action in this case is precluded by KRS 338.021(2), which states clearly and unambiguously that KOSHA is not to be construed *"to enlarge or diminish or affect in any manner the common law or statutory rights, duties, or liabilities of employers or employees."* This language is clear. the enactment of KRS Chapter 338 did not, directly or *indirectly*, bring into existence a new cause of action. If the cause of action did not exist before KRS Chapter 338's enactment (the cause of action claimed in this case did not), then it does not come into existence because of the enactment of KRS Chapter 338. The majority opinion construes KOSHA otherwise.

The majority opinion relies on *Travelers Indemnity Co. v. Reker*[8] for the proposition that "[i]t is not KOSHA, but KRS 446.070, that authorizes Appellants to bring this private civil action for damages." But as we noted in that case, when "two statutes are irreconcilable, the later

enactment prevails"[9] and "when two statutes are in conflict, one of which deals with the subject matter in a general way and the other in a specific way, the more specific provision prevails."[10] This is why we read the Workers' Compensation statute in that case as not giving rise to a cause of action through KRS 446.070. Similarly, in this case, KRS Chapter 338 was enacted long after KRS 446.070 and addresses specifically occupational safety issues. Moreover, unlike the statutory schemes in *Reker* and the cases cited therein, KRS Chapter 338 contains an express provision that bars the creation of a new cause of action.

Rather than determining if KRS 446.070 has an effect given the limitations it contains,[11] as we did in *Reker*, the task here is determining whether KRS 338.021(2) contains an outright bar on a new cause of action. Given the clarity of the language in that statute, denying Appellants' cause of action here should be a simple matter. Unfortunately, the majority opinion has engaged in a rather gymnastic chain of reasoning to find the existence of a cause of action, in contradiction of the clear language KRS 338.021(2).

The majority opinion's reliance on *Ellis v. Chase Communications, Inc.*[12] is also misplaced. *Ellis* specifically held that an employer "must owe a duty to an employee

---

St.: 'A person injured by the violation of any statute may recover from the offender such damage as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed." ').

**8.** 100 S.W.3d 756, 762 (Ky.2003).

**9.** *Id.* at 763 (citing *Butcher v. Adams,* 310 Ky. 205, 220 S.W.2d 398, 400 (1949)).

**10.** Id.

**11.** *See Grzyb v. Evans,* 700 S.W.2d 399, 401 (Ky.1985) ("Under KRS 446.070, a person injured by the violation of any statute may

recover from the offender such damages as he sustained by reason of the violation. *But this is limited to where the statute is penal in nature, or where by its terms the statute does not prescribe the remedy for its violation. Hackney v. Fordson Coal Co.,* 230 Ky. 362, 19 S.W.2d 989 (1929). Where the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." (emphasis added)).

**12.** 63 F.3d 473 (6th Cir.1995).

under a theory of liability independent of OSHA, as OSHA [itself] does not create a private right of action."[13]  As further noted by the *Ellis* Court, "[t]he Act itself explicitly states that it is not intended to affect the civil standard of liability."[14] Like in *Ellis,* Baize owed no duty independent duty to Hargis.  And KRS 446.070 does not create an independent duty; it merely provides for enforcement of a breach of an existing statutory duty other than one contained in KOSHA.  Yet under the majority's interpretation, *KRS 338.031(1)(b)* provides the duty that KRS 446.070 allegedly gives effect to.  Lest the majority forgets, KRS 338.031(1)(b) is a part of KOSHA; any duty it supposedly creates is not independent of KOSHA. But even if the holding of *Ellis* could be perverted to support the majority opinion, the federal court's interpretation of OSHA is not binding on this Court in our construction of KOSHA, and a reading of the exclusion clearly shows an intention by the Legislature to preclude this type of action.

For the above reasons, I dissent and would affirm the Court of Appeals.

JOHNSTONE, J., joins this dissenting opinion.