ROGERS, J., Circuit Judge,
dissenting.
This case involves a contractor’s agreement with a mine operator to indemnify for, and obtain insurance covering, injury to the contractor’s employees while on the mine operator’s land. A terrible accident resulting from a regulatory violation by the mine operator gravely injured an employee of the contractor. The employee has been compensated with $3.6 million from the mine operator. The contractor, it turns out, had complied with its contractual obligation and obtained the insurance. The issue on appeal is whether the mining company, having paid the compensation, can ultimately recover over on the insurance that it successfully required the contractor to obtain. There is nothing in Kentucky public policy that prohibits such an indemnity resulting from a contract between two employers, where the arrangement could in no way have led to the employee’s not recovering. This is not a case where the mine contractually required the employee to bear the risk as a condition of employment, in which case there might have been no recovery absent a public policy against such a contract. To extend this public policy to invalidate contracts requiring that other parties obtain insurance is not consistent with the very idea that entities can obtain insurance covering liability for their own negligence. The winner on this appeal is not the small company that faithfully obtained the insurance that it contracted to obtain, but the insurance company that will not have to *599 pay for losses that it accepted premiums to cover. I therefore respectfully dissent.
For the reasons given by the district court, Universal owed Crum Motor Sales a contractual duty to defend, which it breached. Moreover, I agree with the majority that Universal should not have to pay if Crum Motor Sales had no obligation to indemnify Martin County Coal. Under Kentucky law and the facts of this case, however, Crum Motor Sales did have such an obligation.
Kentucky law generally counsels against invalidating contracts. It is true that an agreement that exempts a party from liability for future negligence is “disfavored and ... strictly construed against the [party] relying upon [it].” Hargis v. Baize, 168 S.W.3d 36, 47 (Ky.2005); see also Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp., 238 S.W.3d 644, 650 (Ky.2007). Such contracts must be unmistakably clear as to the liabilities released and assumed, and the contract may be relied upon only for harms that were “clearly within the contemplation of the [parties].” Hargis, 168 S.W.3d at 47.
But there is of course no contract in this case that exempts Martin County Coal from liability. The injured employee received $3.6 million and the resolution of this appeal in no way affects that phyment one way or another. The plaintiff in Hargis was an individual, although to be sure he was an independent contractor for workers’ compensation purposes. The release in Hargis made clear that the lumber company that caused his injury was forever held harmless for any bodily injury sustained by an individual worker. Id. at 46^47. This is a classic exemption from liability and precisely the type of pre-injury release that courts often invalidate as against public policy. Indeed, the commentary to the Restatement (Second) of Torts, § 496B, relied upon by Hargis, 168 S.W.3d at 47, states:
Where the defendant and the plaintiff are employer and employee, and the agreement relates to injury to the employee in the course of his employment, the courts are generally agreed that it will not be given effect. The basis for such a result usually is stated to be the disparity in bargaining power and the economic necessity which forces the employee to accept the employer’s terms, with the general policy of the law which protects him against the employer’s negligence and against unreasonable contracts of employment.
Restatement (Second) of Torts § 496B cmt.f (1965). It was a small jump for the Kentucky Supreme Court to extend this widely accepted public policy doctrine to individuals who work for employers but who are technically independent contractors. In each case, without the public policy exception there would be no recovery for the negligence — -an untoward result.
This public policy does not logically extend to prohibiting an employer from obtaining insurance to cover its liability for negligence. That would be an absurd reading of Hargis. Indeed, public policy arguably supports obtaining insurance, so that injured workers get compensation. The coal mining company in this case insisted that a contracting company obtain insurance so as to indemnify the mining company for the compensation that it must pay to the individual. This is a commercial transaction designed to shift the cost of insurance, not a release to avoid compensation to the injured worker. Particularly in this case, where the contractor was able to obtain the insurance as part of its cost of doing business, it makes no sense to say that public policy protects the contractor’s insurance company, from liability.
*600 This reasoning is supported a fortiori by the Kentucky Supreme Court’s later case of Cumberland Valley Contractors, Inc. v. Bell County Coal Corp., 238 S.W.3d 644 (Ky.2007). That case involved economic harm resulting to a mine operator from the landowner’s violation of a safety regulation. The court upheld as valid an exculpatory clause in the mining contract. The case in other words involved no liability to the injured party, not who was going to have to pay or who was going to have to obtain insurance. The court still held that the exculpatory clause was enforceable. To invalidate a contractual provision, the court required a major disparity in bargaining power. The court distinguished the situation in Hargis where “[t]he plaintiffs decedent was an individual truck driver who worked as an independent contractor with the defendant owner of several sawmills,” from that in Cumberland Valley, in which “sophisticated corporate entities negotiated the allocation of a jointly shared risk,” and neither party “was compelled to enter into [a contract] to obtain a necessity, such as medical care or personal employment.” Id. at 653. I do not assume that a family-run, rural business is of necessity one that must be viewed as unsophisticated, but even if so, Crum Motor Sales was clearly not an individual and there was no necessity such as “medical care or personal employment.” Thus even if the contractual provision in this case could be described as an exculpatory clause, which it could not, the instant case appears much closer to Cumberland Valley than to Hargis.
But the contract was not an “exculpatory clause.” It was an insurance obligation clause, not exculpating the coal operator, but agreeing to obtain insurance to indemnify him. And despite any asserted lack of sophistication, Crum Motor Sales was able to obtain the required insurance from Universal, an entity that in turn certainly does not lack in sophistication.
The later decision of the Court of Appeals of Kentucky in Speedway Superamerica, LLC v. Erwin, 250 S.W.3d 339 (Ky.Ct.App.2008), is like Hargis and similarly does not support Universal. The court in Speedway invalidated an indemnification provision signed by a 55-year-old man with an eighth grade education who was injured at work. Id. at 340. The court said the provision was analytically indistinguishable from an exculpatory, pre-injury release. Id. at 341. As in Hargis, but unlike in the instant case, validating the contractual provision would have precluded recovery by the injured individual.
There is little harm to the public where these risks are adequately insured against. Here, Crum Motor Sales was required to provide the insurance for mine-site accidents befalling its own employees, and Crum Motor Sales did indeed procure such insurance. A fair resolution of this case would require Universal to accept responsibility under its policy, and public policy certainly does not preclude it. I would reverse and remand.
Finally, I would dismiss the cross-appeal for lack of appellate jurisdiction. Parties may not cross-appeal judgments where they seek no change to the judgment appealed from. See Wheeler v. City of Lansing, 660 F.3d 931, 939-40 (6th Cir.2011). Counsel for Universal may of course defend their favorable judgment on grounds rejected by the district court, but they are not entitled under the appellate rules to file an extra brief to do so. Treating Universal’s arguments on cross-appeal as arguments supporting affirmance on grounds rejected by the district court, I would reject those arguments for the reasons given by the district court.