**Alexandria GREGO, Appellant**

v.

**Susanne JENKINS; Dana Michelle Uptain; Lydia Wagner; Kasie Seacrest; Multiple Unknown Defendants, Agents And/Or Employees Of Woodland Baptist Church And Woodland Baptist Church, Appellees**

NO. 2015–CA–001142–MR

Court of Appeals of Kentucky.

January 13, 2017

Discretionary Review Denied by Supreme Court September 20, 2017

BRIEFS FOR APPELLANT: M. Catherine Halloran, William D. Nefzger Louisville, Kentucky

BRIEF FOR APPELLEES: Deborah L. Harrod Louisville, Kentucky

BEFORE: COMBS, THOMPSON AND VANMETER,[1] JUDGES.

OPINION

THOMPSON, JUDGE:

Alexandria Grego appeals from a summary judgment of the Jefferson Circuit Court in favor of Susanne Jenkins, Dana Michelle Uptain, Lydia Wagner, Kasie Seacrest, multiple unknown defendants, agents and/or employees of Woodland Baptist Church and Woodland Baptist Church (collectively Woodland Baptist Church). The circuit court ruled that release forms signed by Alexandria's mother prior to departing for a mission camp precluded her personal injury claim. Alexandria contends the release forms are not enforceable because neither form expressly released Woodland Baptist Church for

---

1. Judge Laurence B. VanMeter concurred in this opinion prior to being elected to the Kentucky Supreme Court. Release of this opinion was delayed by administrative handling.

its own negligent conduct during Alexandria's participation in the camp, were broadly written, and the purported releases were buried in provisions unrelated to preinjury releases. We agree and reverse.

When Alexandria was sixteen years old, she attended the Woodland Baptist Church and was a member of the church youth group. From July 9, 2007 through July 14, 2007, the youth group was scheduled to attend a Woodland Church–sponsored youth ministry camp. The camp was hosted by LifeWay Christian Resources of the Southern Baptist Convention at Belmont College in Nashville, Tennessee.

Information packets were provided on July 2, 2007. Included in the packet was a Woodland Baptist Church "medical permission and release form" and a LifeWay Christian Resources "medical/permission release form."[2] The Woodland Baptist Church medical permission and release form requested the camp's participant's name and address, the guardian's name and phone number as well as information regarding immunizations, allergies, any medications taken by the participant, and childhood diseases. On the same form and in small print, under the heading, "PERMISSION FOR TREATMENT" the form states:

> My permission is granted for the Woodland Baptist Church Minister to Families, church official, or any church staff or adult chaperone present or in charge of First Aid, to obtain necessary medical attention in case of sickness or injury to my minor child named above while at or while traveling to or from any Woodland Baptist Church youth activity. This release shall be valid from today's date through December 21, 2007. I, the undersigned, do hereby verify that the

above information is correct and I do hereby release and forever discharge all sponsors and employees of Woodland Baptist Church from any and all claims, demands, actions or cause of action, past, present, or future arising out of any damage or injury while participating in events sponsored by Woodland Baptist Church.

The LifeWay Christian Resources medical release and permission form requested the same contact and medical information. In a clause entitled "Permission For Medical Treatment, Photography/Video Notice, and Release and Indemnity" the form states:

> My permission is granted for the camp or event director; church official, any camp or event staffer, or adult present or in charge of First Aid, to obtain necessary medical attention in case of sickness or injury to my child. Also, I understand that as a participant, my child may be photographed or videotaped during normal camp or event activities and these photos/videos may be used in promotional materials. I, the undersigned, do hereby verify that the above information is correct and I do hereby release and forever discharge LifeWay Christian Resources of the Southern Baptist Convention, camp or event sponsors, or state conventions and their employees from any and all claims, demands, actions, or causes of actions, past, present, or future arising out of any damage or injury while employed by or participating in this camp or event. I agree to indemnify LifeWay for any and all claims, demand, damages injuries, cost, suits or causes of action, past, present, or future arising out of or caused by my child while participating in this camp

**2.** The release is entitled "FUGE" but for clarity we refer to it as LifeWay Christian Resources release.

or event or while on property leased or owned by LifeWay.

Alexandria's mother, Gloria Grego, completed and signed the forms.[3]

The youth group departed the church on July 9, 2007, and upon arriving at Belmont College were assigned dorm rooms. Colleen Ryan, Mallory White and Courtney Wiggs were assigned to a room across the hall from Alexandria. On July 10, 2007, Colleen, Alexandria and three other girls received permission to return to their dorm rooms to change clothes before the afternoon session. No chaperones accompanied the girls.

At her deposition, Alexandria testified she went to her room and then proceeded to Colleen's room to ask whether the girls needed to take their Bibles to the worship center. Upon entering, she was told to leave but proceeded inside. Once inside, she was again told to leave and then Colleen hit her nose.

Colleen testified that Alexandria entered uninvited and one of the girls attempted to push her out. When Colleen closed the door, she pushed Alexandria in the face. She testified she did not intend to injure Alexandria.

Alexandria returned to her room, observed blood coming from her nose and called her mother. Chaperones who examined Alexandria's face and nose did not see any signs of injury.

Later that evening, Gloria drove to Nashville and took Alexandria to a hospital where she was x-rayed and offered pain medication. Several days later, after the pain did not subside, Alexandria was seen by her family physician who referred her to an ear, nose and throat specialist. In December 2007, Alexandria underwent nose surgery.

After Alexandria turned eighteen, she filed this action alleging negligence against Woodland Baptist Church for failure to supervise the youth group during the camp and failure to train and/or have proper access to medical care. She alleged she suffered severe physical injuries, emotional distress, lost wages, and destruction of her power to labor and earn money.[4] Alexandria also asked for punitive damages.

Following discovery, Woodland Baptist Church moved for summary judgment on the basis that the releases are valid and enforceable under Kentucky law. It argued that the releases are clear and unambiguous, that the Gregos were not compelled to execute the releases, and that public policy favors protecting charitable organizations. Alexandria argued that the releases are "buried" in language permitting medical treatment and do not release Woodland Baptist Church for their own negligence and that Gloria was not in an equal position when signing the forms. The circuit court granted summary judgment in favor of Woodland Baptist Church.

Summary judgment is proper when it appears that it would be impossible for the adverse party to produce evidence at trial supporting a judgment in his favor. *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 276 (Ky. 1991). The record must be viewed in a light most favorable to the party opposing the motion and all doubts must be resolved in his favor. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). "Because summary judg-

---

**3.** Alexandria signed the LifeWay Christian Resources release. She does not raise any issue regarding her capacity as a minor to sign or her mother's authority to sign a preinjury release releasing any claim Alexandria has against Woodland Baptist Church.

**4.** Alexandria also sued Colleen but that claim was settled and dismissed.

ment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo." Lewis v. B & R Corp.,* 56 S.W.3d 432, 436 (Ky.App. 2001) (footnote omitted).

In *Hargis v. Baize,* 168 S.W.3d 36 (Ky. 2005), an independent contractor was killed when a log rolled off a trailer and struck him. His widow filed a wrongful death action against Allen Baize, the owner of the lumber yard where the accident occurred, for negligence. Baize argued that a release form signed by the deceased exculpated him from any liability for damages caused by Baize's own negligence. The release signed by the deceased provided:

## RELEASE

It is hereby agreed and acknowledged that I am a self-employed independent contractor. Therefore, I am not required to carry Worker's compensation according to Kentucky Law. I accept responsibility for my own property and person and *release* ALLEN BAIZE, d/b/a GREENVILLE LOG & LUMBER CO., BAIZE FOREST PRODUCTS, INC., GRAPEVINE LUMBER CO., A R LUMBER CO., AND JORDAN LOGGING, INC., *and forever hold him harmless for any property damage/bodily injury sustained by me or any other person I authorize to be on the working premises while performing services for said contractor.* I agree that my relationship with him will be strictly as a subcontractor and not an employee, which makes me ineligible for any employee benefits under said contractor's insurance programs or state requirements.

*Id.* at 46–7.

Addressing whether the release exculpated Baize from liability for his own neg-

ligence, the *Hargis* Court recited the rule that although exculpatory contracts for exemption from future liability for negligence are not invalid per se, "such contracts are disfavored and are strictly construed against the parties relying upon them." *Id.* at 47 (citation omitted). Because the law disfavors such contractual provisions, "[t]he wording of the release must be 'so clear and understandable that an ordinarily prudent and knowledgeable party to it will know what he or she is contracting away; it must be unmistakable.'" *Id.* (quoting 57A Am.Jur.2d, *Negligence* § 52 (2004)). Specifically, the court held that a preinjury release will be upheld only if:

(1) it explicitly expresses an intention to exonerate by using the word 'negligence;' or

(2) it clearly and specifically indicates an intent to release a party from liability for a personal injury caused by that party's own conduct; or

(3) protection against negligence is the only reasonable construction of the contract language; or

(4) the hazard experienced was clearly within the contemplation of the provision.

*Id.*

Our Supreme Court concluded that the release signed by Hargis satisfied none of these alternatives. *Id.* Applying the stated law to the release, it held that the release did not exculpate Baize from liability. It did not mention the word negligence and did not explicitly purport to release Baize from liability for his own negligence. Furthermore, protection of Baize from liability for his own negligence was not the only reasonable construction of the release. Finally, it did not identify the type of injury

or damage for which liability was being released. *Id.*

There is no significant distinction between the releases in this case and that signed by the decedent in *Hargis.* The releases do not mention "negligence" and do not explicitly release Woodland Baptist Church from liability for personal injuries caused by its own conduct. Furthermore, the releases could reasonably be construed to only release Woodland Baptist Church from vicarious liability in connection with any medical treatment rather than for its own conduct. Such a construction is particularly reasonable where, as here, the language relied upon by Woodland Baptist Church is included within the medical permission form and "buried" in small print within that provision. Finally, there is no specificity in the releases regarding the type of harm contemplated by the releases, and, in fact, they are broadly written to purport to cover all claims, past and future, from whatever source or of whatever nature.

Woodland Baptist Church argues that we should exempt churches from the view expressed by our Supreme Court that pre-injury releases are disfavored and are to be strictly construed. *Id.* It contends that as applied to churches and other charitable organizations, the rule would have a chilling effect on the ability of those organizations to render services beneficial to the public. There is no reason to believe the dire consequences foreseen by Woodland Baptist Church will occur. Churches and charitable organizations are still shielded from liability for negligence for their conduct if a legally sufficient preinjury release is obtained. By legally sufficient, we mean a release that meets one of the alternatives in *Hargis.*

We conclude that the releases do not exculpate Woodland Baptist Church from liability for Alexandria's alleged injuries caused by its own negligence. The summary judgment of the Jefferson Circuit Court is reversed and the case remanded for further proceedings.

ALL CONCUR.