## Royal Indemnity Company v. May & Ball.

(Decided December 2, 1927.)

### Appeal from Floyd Circuit Court.

1.  Insurance.—Automobile dealer, acting as agent of insured in procuring insurance covering car sold, cannot bind insurer by statements or actions, unless insurer subsequently ratifies such statements or actions, which, in order to be effective, must have been done with knowledge of facts.

2.  Insurance.—Where, at time application for automobile indemnity policy was made by agent for insured, loss had already occurred, subsequent issuance of policy created no liability.

3.  Insurance.—Automobile indemnity policy, indemnifying insured only against consequences of accidents for which they were liable for damages, does not permit a recovery, unless insured's negligence produces accident.

DYSARD & MILLER for appellant.

E. L. ALLEN and A. J. MAY for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On June 25, 1925, the appellees and plaintiffs below, Curtis May and Elder Ball, were the members of a partnership conducting a merchandise business in Prestonsburg, Ky., under the firm name of May & Ball. A. C. Carter at that time operated in the same city a garage under the name and style of Carter Motor Sales Company, and he dealt in automobiles. The General Motors Acceptance Corporation was an incorporated company, with an office in Cincinnati, Ohio, and a part of its business was to discount and purchase notes executed for the purchase price of automobiles to the dealer who sold them, and, as a condition precedent to its purchasing a note, it required the owner to insure the automobile for which the note was

executed against fire and theft, and it furnished to its various customers general applications to it to procure such insurance, and upon which an application could also be made for public indemnity insurance. When such application would be filed with it, after the negotiation to it of a purchase-money note, it in turn applied to a branch office of the ''Ohio Exchange Company,'' which seems to be an insurance agency representing many companies with its chief office in Cleveland, Ohio.

In the early forenoon of June 25, 1925, Carter sold to plaintiffs a delivery truck, the deferred payment for which was $432, evidenced by note of plaintiffs to Carter. The truck was thereupon delivered to plaintiffs, and in the early part of the afternoon of the next day (June 26th), while Ball was driving it in Prestonsburg, he collided on the streets with, and killed, Arthur Ross Wellman, an infant, who was, according to the testimony, between four and six years of age. Some week or more thereafter plaintiffs received an indemnity policy from the appellant and defendant below, Royal Indemnity Company, insuring them against loss as a consequence of accidents while operating the truck, and for which they would be legally liable. On December 30, 1925, plaintiffs brought this ordinary action in the Floyd circuit court on such indemnity policy, seeking a recovery against defendant for $1,750 the items of which, as alleged in the petition, were $1,000, amount paid the administrator of the deceased infant in settlement of the claim; $250 paid to the attorney of the administrator who had the claim for collection; and $500 for their attorney's fees for services rendered in the prosecution of this action and in representing plaintiffs in the compromise settlement. Defendant denied all liability because of certain pleaded defenses, some of which will be hereinafter considered and determined, and by reason of which determinations it will be unnecessary to consider the others. A reply made the issues, and upon trial the jury, under the instructions of the court, returned a verdict in favor of plaintiffs for the sum of $1,500, which the court declined to set aside on defendant's motion for a new trial, and from the judgment pronounced thereon it prosecutes this appeal. Practically every ground contained in the Code was included in the motion for a new trial, the most of which were meritorious, but all of which need not be discussed or determined.

The circumstances under which plaintiffs became possessed of the policy sued on are these: Carter seems to have discounted all of his notes to the Ohio corporation, and, as stated, it always required insurance against fire and theft on the automobiles sold.  For convenience it furnished Carter with blank applications for such insurance from his purchasers, and upon which application other insurance could be made. At the time of the sale of the truck to plaintiffs they signed such application, which, of course, was directed to no insurance company, nor to any insurance agency ('but which latter fact makes no difference), and on it plaintiffs also applied for public indemnity insurance.   Carter testified that in the forenoon of the day of the sale he mailed that application to Cincinnati, but it is overwhelmingly proven that he carried it and the note to Cincinnati in person, and did not arrive there until June 28, 1925, and that on the next day he appeared at the offices of both the General Motors Acceptance Corporation and the Ohio Exchange Company, going first to the office of the former, where he negotiated the sale of the note and took its check therefor bearing that date, and he then went with an officer or employee of that corporation to the insurance agency, and filed plaintiff's application for insurance, and at that time he said that he wanted the policy dated as of the date of the sale (June 25, 1925).   The application was forwarded, and later a policy was issued by the New York office and mailed to plaintiffs, and they received it more than a week after their purchase.

It was shown beyond dispute that no person connected with the branch office at Cincinnati, or with the chief insurance agency at Cleveland, Ohio, or with defendant at its office in New York when it issued the policy, or any agent of it of any character anywhere, ever knew of the accident resulting in the death of young Wellman, which happened on June 26, 1925.   Neither was it shown by any evidence, either competent or incompetent, that Carter was any kind of agent of defendant.   He was but a mortgagee of the truck after it was sold to plaintiffs, and, to enable him as such mortgagee to conduct his business on the plan he had adopted, it became necessary to have insurance upon the truck he sold to plaintiffs, although he was not interested as such mortgagee in having public indemnity insurance against accidents to persons on the highway.   He therefore agreed with plaintiffs that

he would secure the policy sued on for them, and he thereby became their agent for that purpose. He does not pretend in his testimony that he ever acted in any capacity as an insurance agent for any company, much less defendant. Therefore nothing he said or did could bind defendant, unless it subsequently ratified whatever he said or did; but, in order for ratification to be effective, the ratifier must have knowledge of the facts, and which is a principle of law so fundamental as to require no support with citation of authorities.

However, it is not even claimed in this case that defendant ever ratified anything that Carter did. The only persons it knew in the transaction were plaintiffs, and its own agents through whose offices the application for the insurance passed. Carter admits going to Cincinnati on the 28th of June, and which was proven by the register of the hotel at which he stopped, but he says that the purpose of his trip had nothing to do with the insurance involved or anything connected therewith, and that he did not mention it to any one whomsoever while he was in Cincinnati on that trip, although, in an affidavit he made in support of plaintiff's claim when they were endeavoring to collect on the policy before the filing of this action, he said that:

"I *think* the papers (the application for the insurance) were mailed in on June 25, 1925, to the General Motors Acceptance Corporation at Cincinnati."

That corporation conducted no sort of insurance agency, and was therefore no agent of the defendant, but it generally, if not entirely, effected its insurance through the branch office of the Ohio Exchange Company located in the same city, and, perhaps, in the same building.

In the case of Hopkins v. Phoenix Fire Insurance Co., 200 Ky. 365, 254 S. W. 1041, we discussed and determined the governing principles of law arising from facts analogous to those presented by this record, and it was therein held that an insurance company was not liable for a loss occurring before issuing its policy, notwithstanding some authorized local agent may have known the fact of loss, unless a binding oral contract with the insurance company was entered into before the loss. We furthermore held in that case that an application to a regular agent for insurance which did not name the company to whom it was made, nor other material terms of the pro-

posed contract, would not be binding on the company that subsequently issued the policy until it communicated its acceptance to the insured; for until that time the minds of the parties to the contract never met. So that, whether Carter was an agent of defendant or not, or whether he mailed his application to Cincinnati, or carried and delivered it in person, the legal rights of the parties are the same, since no application was ever made to any designated company, and no agent applied to accepted the application for defendant, and, if a loss had already occurred at that time, the subsequent issual of the policy would create no liability. A reading of this record is most convincing that the only steps taken toward effecting insurance up to the time of the accident were the negotiations and application made therefor to Carter, and who, as we have seen, was only the agent of plaintiffs for the purpose of procuring the insurance, he at that time being neither the agent of defendant nor any other insurance company. Of course, defendant could subsequently ratify what he or any one else did toward effecting the insurance, but we repeat it would not be binding, unless the facts were known by it or its ratifying agent at the time of the ratification, either by issuing the policy or otherwise. The court therefore should have sustained defendant's motion for a peremptory instruction in its favor on that ground.

Another ground upon which the demurrer should have been sustained was that the policy, if binding in all respects, only purported to indemnify plaintiffs against the consequences of accidents for which they "are liable for damages," and, of course, that would not be so unless their negligence produced the accident. Plaintiff's pleading expressly alleged that the accident occurred "without negligence upon the part of these plaintiffs." So that they expressly pleaded nonliability of defendant under the express terms of the policy sued on. There are other material errors in the admission and rejection of testimony as well as in the instructions, but, since it becomes unnecessary to consider them for the reasons hereinbefore stated, they will not be further referred to.

Wherefore the judgment is reversed, with directions to set it aside, to sustain the motion for a new trial, and for proceedings consistent with this opinion.