**SPEEDWAY SUPERAMERICA, LLC, Appellant,**

v.

**Sebert L. ERWIN, Appellee.**

No. 2007–CA–000451–MR.

Court of Appeals of Kentucky.

March 21, 2008.

William H. Harkins, Jr., Huntington, WV, for appellant.

Ralph T. McDermott, Ashland, KY, for appellee, Sebert L. Erwin.

Before ACREE and LAMBERT, Judges; ROSENBLUM,[1] Senior Judge.

---

1. Senior Judge Paul W. Rosenblum sitting as Special Judge by assignment of the Chief Jus-

*OPINION*

ACREE, Judge.

Speedway SuperAmerica, LLC, appeals from an order of the Greenup Circuit Court dismissing its counterclaim against Sebert L. Erwin. We affirm.

The facts are not in dispute. Speedway completed its own pre-printed "Basic Service Contract" to be executed by Erwin, a 55–year–old man with an eighth grade education. The contract described Erwin's "Scope of Work" as "General Contracting," referred to thereafter as the "Work." The specific terms at issue are in Sections 5 and 6.

5. INDEMNIFICATION: YOU AGREE TO PROTECT, INDEMNIFY, HOLD HARMLESS AND DEFEND US, OUR OFFICERS, DIRECTORS AND EMPLOYEES, AGAINST ALL ACTIONS, CLAIMS, DAMAGES, DEMANDS, SUITS AND OTHER LIABILITIES, INCLUDING ATTORNEY FEES AND OTHER EXPENSES OF LITIGATION ARISING OUT OF, IN WHOLE OR IN PART, YOU OR YOUR EMPLOYEES, AGENTS AND SUBCONTRACTORS BREACH OF ANY TERM OF THIS CONTRACT, OR ANY ACT OR OMISSION IN THE PERFORMANCE OF THIS CONTRACT.

6. Insurance: You will secure the following: (1) General Liability insurance in the amount of Three Hundred Thousand Dollars ($300,000) which lists us as an additional insured[.]

Additional terms of the contract significantly favored Speedway. Erwin was prohibited from assigning the contract and from subcontracting the work to be performed without Speedway's consent. There was no requirement that Speedway's refusal of such consent had to be reasonable.

Though the contract was for a term of five years, Speedway retained the right to cancel the contract upon written notice "at any time, for any reason." The contract did not provide Erwin a reciprocal right of cancellation. If Speedway did cancel the contract, Erwin's right to recover damages was limited.

Speedway also reserved the right to terminate the contract if Erwin should "fail to perform in a safe and satisfactory manner" in which case Erwin would "be liable to [Speedway] for all damages allowed by law[.]" Erwin did not have a reciprocal right to terminate the contract.

Erwin was also required to "waive any lien or claim of lien which [he] may have in connection with the Work."

He was also obligated to comply with the various Speedway employee policies such as random drug testing.

On the morning of April 16, 2004, Erwin reported to the Speedway office. Despite contract language indicating that Speedway would "exercise no control over the means or methods of [his] Work," a Speedway supervisor instructed Erwin to report to a Speedway Gas Station in Huntington, West Virginia, to assist in the removal of a walk-in-freezer and installation of a replacement.

The old freezer had been placed outside the convenient store building to be hauled off the premises. Erwin assisted in loading the freezer onto a Speedway-owned

tice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute (KRS) 21.580.

pickup truck. While loading the freezer, Erwin fell off the side of the truck bed, sustaining injuries.

Erwin filed a complaint against Speedway in Greenup Circuit Court seeking damages resulting from his injury. Speedway answered and filed a counterclaim seeking enforcement of the contract's indemnity provision. Erwin moved to dismiss Speedway's counterclaim on grounds that the indemnification provision was invalid and unenforceable as against Kentucky public policy. The circuit court granted Erwin's motion and dismissed Speedway's counterclaim. This appeal followed.

■ The circuit court based its decision on *Hargis v. Baize,* 168 S.W.3d 36 (Ky. 2005). *Hargis* addressed the validity of an exculpatory contract for exemption from future liability for negligence, whether ordinary or gross negligence, *i.e.,* a pre-injury release. While *Hargis* held that such agreements were not invalid *per se,* it also stated that "such contracts are disfavored and are strictly construed against the parties relying upon them." *Id.* at 47. More than simply construing the release strictly against the drafter, *Hargis* provided that the release must contain utmost clarity in order to be enforceable. Its wording must be "so clear and understandable that an ordinarily prudent and knowledgeable party to it will know what he or she is contracting away; it must be unmistakable." *Id.* (citation omitted). The Greenup Circuit Court applied *Hargis* and concluded that this exculpatory provision failed to satisfy the requirements of that case. We agree with the circuit court.

■ The interpretation and legal effect of a contract is a matter of law. *Morganfield Nat'l Bank v. Damien Elder & Sons,* 836 S.W.2d 893, 895 (Ky.1992). We therefore review the trial court's determination of whether a contractual provision is void as against public policy, or otherwise invalid, under a *de novo* standard, especially since findings of fact are not at issue. *See, generally, Anderson v. Ky. Growers Ins. Co., Inc.,* 105 S.W.3d 462 (Ky.App.2003)(rejecting argument that contractual provision was void against public policy and affirming, in part, the trial court's grant of summary judgment on that issue, applying *de novo* standard of review.).

The parties disagree as to which authority controls. Erwin continues to urge application of *Hargis.* Speedway argues that *Hargis* is inapposite because the document at issue is not a pre-injury release, but an indemnification provision of the type held valid in *Fosson v. Ashland Oil & Refining Co.,* 309 S.W.2d 176 (Ky.1957). We agree that the specific contractual provisions in *Fosson* more closely mirror the provisions before us. Our analysis of the underlying reasoning of both cases reveals factors that make any differences in the cases meaningless.

■ First, where a party uses an indemnification provision to defend against its own negligence, any distinction between a pre-injury release and an indemnification provision can become, as it has in this case, analytically negligible. When an indemnitee uses an indemnification provision in such manner, the provision becomes the virtual equivalent of an exculpatory, pre-injury release. In such cases, *Hargis* remains as relevant as *Fosson.*

Second, if we apply the reasoning in *Fosson* and completely disregard *Hargis,* we reach the same result. *Hargis* and *Fosson* are easily harmonized.

■ Third, a key factor, perhaps *the* key factor, in the analysis of both pre-injury releases and indemnification provisions used to defend the indemnitee's own

negligence, is the relative bargaining power of the parties who enter into them.

The predominant fact of *this* case is the disparity in bargaining power existing between these two parties. Not only did Erwin have only an eighth grade education, the one-sided contract terms themselves are strong indication of the superior bargaining position Speedway enjoyed. Other than the gross compensation for his work, it is difficult to see any benefit Erwin received under this contract. Speedway's ability to cancel the five-year contract "at any time, for any reason" made even the term *illusory.* Erwin appears to have been burdened with the requirements and restrictions of at-will employment by Speedway, but with no employee-type benefits. While his annual compensation ranged roughly between $38,000 and $55,000, he was responsible for paying his own taxes and health insurance, as well as incurring the cost of any additional "personnel, materials, and equipment necessary to complete" the Work. His obligation to provide liability insurance, which he did maintain, was as much for Speedway's benefit as his own. That obligation, as well as the requirement that he maintain worker's compensation and auto insurance, further reduced the value of his compensation. Without the ability, absent Speedway's consent, to assign the contract or subcontract the Work, the contract itself had little independent value as intangible property. Even if he could obtain Speedway's consent to assign or subcontract, we doubt Erwin could find a party willing to undertake the responsibilities of this contract at a price that would yield Erwin any profit at all. We are not in doubt that there was a significant disparity in the bargaining positions of the parties to this contract.

Our Supreme Court recently noted that "although our decision in *Hargis* does not explicitly discuss the parties' relative bargaining positions, a significant disparity in bargaining positions existed between the parties to that contract." *Cumberland Valley Contractors, Inc. v. Bell County Coal Corp.,* 238 S.W.3d 644, 653 (Ky.2007). Focusing on that key factor in *Cumberland Valley Contractors,* the Supreme Court examined the circumstances of the subject contract and the parties to it and held that the subject exculpatory clause "must be enforced as part of an arm's-length transaction between sophisticated parties with equal bargaining power." Cumberland Valley Contractors at 650.

Recognizing the importance of freedom to contract, the courts of this Commonwealth have traditionally enforced exculpatory provisions unless such enforcement violates public policy. And despite perceived inconsistencies in recent Kentucky case law, the basic principles regarding the enforceability of exculpatory clauses or contracts were set forth over a century ago in *Greenwich Insurance Co. v. Louisville & Nashville Railroad Co.,* [112 Ky. 598, 66 S.W. 411 (1902)]. In deciding to uphold the exculpatory clause at issue there, our predecessors noted that the parties were "dealing at arm's length and upon an equal footing[,]" and that the contract was entered into voluntarily without either party being compelled to enter into the contract on the basis of necessity.

*Id.* (citations omitted).

However, the Supreme Court recognized that "exculpatory clauses have been invalidated more frequently in the context of personal injury cases where an individual is often forced to sign a release to obtain a necessity such as ... employment from a party in a superior bargaining position." *Id.* at 653; *see also, Cobb v. Gulf Refining Co.,* 284 Ky. 523, 145 S.W.2d 96, 99 (1940), *citing* Restatement of Contracts § 575

[(1932)](stating that freedom of contract generally prevails to uphold exculpatory clauses subject to certain exceptions, including "contracts between master and servant relating to negligent injury of the servant in the course of his employment"). We believe the case before us presents such circumstances that we must find the provision invalid.

Speedway argues that this case is controlled exclusively by *Fosson v. Ashland Oil & Refining Co.*, 309 S.W.2d 176 (Ky. 1957). True, the document construed in *Hargis* was denominated a "Release" and was construed as "[a]n exculpatory contract for exemption from future liability for negligence[.]" *Hargis* at 47. It contained one paragraph stating simply that Hargis would hold Baize harmless "for any property damage/bodily injury sustained by" Hargis. *Fosson*, like the case before us, involved a comprehensive contract containing an indemnification provision and a requirement that the contractor/indemnitor maintain insurance in an amount satisfactory to the owner/indemnitee. While the specific language of the provision in *Fosson* differs slightly from that in the provision we must review, it does not differ in its components or in the import of the language. The similarity of the provision in *Fosson* to the provision in the case before us is obvious.

(2) ... The Contractor shall indemnify the Owner against all claims, demands, liens, taxes, loss or damages of any character suffered by the Owner and shall save the Owner harmless from all liability growing out of *or* incurred in the prosecution of said work or arising from any operations, acts, or omissions of Contractor. (Our emphasis.)

(4) Contractor shall comply with all the laws of the State and Municipality where the work is to be performed and shall carry such Contractor's Liability and Workmen's Compensation Insurance as is satisfactory to Owner.

*Fosson* at 177–78. The Court in *Fosson* emphasized the parties' use of the disjunctive "or" in the provision and concluded "that the contractual intent was that the owner be held harmless from all liability incurred in the prosecution of the work or later growing out of the contractor's acts or omissions." *Fosson* at 178. The provision in the case *sub judice* also uses the disjunctive in its very similar language. In *Fosson*, the court found the provision valid and Speedway urges us to reach the same conclusion. Unfortunately, Speedway fails to recognize that the same reasoning that sustained the provision's validity in *Fosson* requires us to find the subject provision invalid.

The decision in *Fosson* was reached by distinguishing itself from the oft-cited case of *Mitchell v. Southern Ry. Co.*, 124 Ky. 146, 74 S.W. 216, 24 Ky.L.Rptr. 2388 (1903). *Mitchell* held that in such cases it is

not only important for the court to consider the language employed in the contract, but the circumstances surrounding the parties, and the object in view which induced the making of it.... The whole of the contract should be read. When we consider the work to be done by the appellant was to yield him but a few thousand dollars in gross, and that his profits, if large, considering the work to be done, would necessarily be small in amount, *it is improbable that he would undertake to indemnify the appellee against losses occasioned by its own acts of negligence.*

*Mitchell* at 217 (emphasis supplied). *Fosson* expresses and applies the logical counterpart that "in cases where it is *not* improbable that a party would undertake such an indemnification of another party we reach a different result." *Fosson*, 309

S.W.2d at 178 (emphasis supplied); *accord, Blue Grass Restaurant Co. v. Franklin,* 424 S.W.2d 594, 599 (Ky.1968). The court found that it was not improbable that W.B. Fosson & Sons, a construction company engaged to erect a 40-foot high tower, would agree to indemnify Ashland Oil as part of the contract. When one of Fosson's employee's was electrocuted while working on that tower, Ashland Oil was held harmless.

Before ruling, the *Fosson* court reiterated "that generally in Kentucky agreements to indemnify against the indemnitee's own negligence are not valid and that ... when there is a doubt as to the meaning of an indemnity clause the construction should be against the contention that the contract was meant to indemnify against an indemnitee's own negligence." *Id.* at 178. "[E]very presumption is against such intention." *Id., citing Mitchell* at 217.

We believe this line of reasoning is entirely consistent with the analysis in *Hargis,* as interpreted in *Cumberland Valley Contractors.* That is to say, such provisions, whether pre-injury releases or indemnification provisions applied to defend against the indemnitee's own negligence, are not against public policy generally, but they are when agreed to by a party in a clearly inferior bargaining position. Even if we were to decide this case by application of *Fosson* alone, we would hold that it was improbable that Erwin intended to undertake such an indemnification of Speedway, and we would, and do, declare the provision contrary to public policy.

For the foregoing reasons, we affirm the judgment of the Greenup Circuit Court.

ALL CONCUR.