*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0236p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────────

MARTIN COUNTY COAL CORPORATION,
        *Plaintiff-Appellant/Cross-Appellee*,

        *v.*

UNIVERSAL UNDERWRITERS INSURANCE
COMPANY,
        *Defendant-Appellee/Cross-Appellant.*

Nos. 11-5773/5793

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 7:08-cv-93—Amul R. Thapar, District Judge.

Argued: October 12, 2012

Decided and Filed: August 16, 2013

Before: KEITH, MARTIN, and ROGERS, Circuit Judges

─────────────────

**COUNSEL**

**ARGUED:** Judd R. Uhl, MANNION GRAY CO., L.P.A., Fort Wright, Kentucky, for
Appellant/Cross-Appellee. Robert E. Stopher, BOEHL, STOPHER & GRAVES, LLP,
Louisville, Kentucky, for Appellee/Cross-Appellant. **ON BRIEF:** Judd R. Uhl,
MANNION GRAY CO., L.P.A., Fort Wright, Kentucky, for Appellant/Cross-Appellee.
Robert E. Stopher, Robert D. Bobrow, BOEHL, STOPHER & GRAVES, LLP,
Louisville, Kentucky, for Appellee/Cross-Appellant.

      MARTIN, J., delivered the opinion of the court, in which KEITH, J., joined.
ROGERS (15–18), delivered a separate dissenting opinion.

─────────────────

**OPINION**

─────────────────

      BOYCE F. MARTIN, JR., Circuit Judge. The legal issue in this case is whether
an insurance company, Universal, must indemnify its insured, Crum Motor Sales, against
a settlement that Crum Motor Sales entered into with a third party, Martin County Coal

1

Corporation, to settle a personal-injury lawsuit that Crum Motor Sales and one of its employees, Philip Crum, brought against Martin County Coal for injuries Crum suffered while on Martin County Coal's premises. We agree with the district court that Universal does not have any duty to indemnify Martin County Coal, standing in Crum Motor Sales' shoes, because Crum Motor Sales proffered enough evidence in its summary-judgment motion on the indemnity issue to show that Crum Motor Sales was not actually legally liable to Martin County Coal in the personal-injury case. Crum Motor Sales was not actually legally liable to Martin County Coal because the basis of its supposed liability—an indemnification agreement that Martin County Coal and Crum Motor Sales entered into in 1997—was unenforceable because it was against public policy for two reasons. The first reason is that the 1997 indemnification agreement was the product of a significant disparity in bargaining power between Martin County Coal and Crum Motor Sales. The second, and related, reason is that the 1997 indemnification agreement shifted liability for compliance with at least one mining-safety statute away from Martin County Coal and onto Crum Motor Sales. We therefore **AFFIRM** the district court's judgment.

In 1997, Crum Motor Sales agreed to service Martin County Coal's light-duty vehicles, such as pick-up trucks. At the time, Crum Motor Sales was a Kentucky-based company with five to nine employees. It was on the brink of insolvency. Martin County Coal, also a Kentucky-based company, was a wholly owned subsidiary of the A.T. Massey Coal Company, Inc., a Virginia-based corporation publicly traded on the New York Stock Exchange. The agreement allowed Crum Motor Sales to enter Martin County Coal's property to service its vehicles. Under the agreement, Crum Motor Sales' employees would pick up Martin County Coal's vehicles either at the coal mine's guard gate or office, or elsewhere on the premises, and return them there after Crum Motor Sales had completed the repairs.

But because Crum Motor Sales' employees would have to enter Martin County Coal's mining site to retrieve the vehicles to be repaired, Martin County Coal also required Crum Motor Sales to enter into an indemnification agreement in 1997. The

parties did not bargain over the indemnification agreement's terms; Crum Motor Sales agreed to the terms that Martin County Coal put forth. According to this indemnity agreement, Crum Motor Sales agreed to "release, indemnify, defend and hold harmless Martin County Coal" over "any and all liabilities, demands, losses, claims and damages of any kind" caused by the acts or omissions of any of Crum Motor Sales' employees while on Martin County Coal's premises, and with respect to injuries or damages to Crum Motor Sales or its employees caused by Crum Motor Sales' performance of work or service. The indemnity agreement also required Crum Motor Sales to provide Martin County Coal with proof of insurance coverage for workers' compensation, commercial general liability, employer's liability, and automobile liability "in amounts reasonably acceptable to Martin County [Coal]." Crum Motor Sales got coverage from Universal. The coverage was effective from September 2000 to September 2001—the period during which Philip Crum was injured.

When Philip Crum, a forty-year-old single man and father of two dependent children, as well as an officer and employee of Crum Motor Sales, arrived at the entrance to Martin County Coal on the morning of January 19, 2001 to pick up a Martin County Coal vehicle for repair, he certainly did not know that he would spend the rest of the year in hospitals and rehabilitation centers. Crum asked David Canterbury, a Martin County Coal employee, if he could ride with him to the mine site to get a Ford pickup truck to take in for service. Canterbury agreed, and Crum got in on the passenger side of the 1997 Chevrolet 2500 series pick-up truck. Canterbury drove the truck across the mine property for almost eight miles along a company haul road.

Suddenly, near the area of Maynard Fork, as the Chevy ascended the last hill to the highwall miner pit, a boulder—measuring about three-and-a-half feet in girth—trundled down the slope on the right side of the road. The boulder gained enough momentum to clear a thirty-foot highwall before it struck the top of the pick-up truck's cab—directly above where Crum was seated. Canterbury would later state that he had no warning before the boulder hit. After impact, the pick-up truck rolled backwards before coming to a stop. The boulder was so heavy that Canterbury and another Martin

County Coal employee could not move it from the truck cab, nor could they extract Philip Crum. It took a Caterpillar 988 loader and boom truck to remove the boulder and to pull the cab of the truck up and away from Crum so that he could be extricated. Crum emerged with broken bones—a left tibia, a fibula, and a right femur, as well as a fractured pelvis. He also sustained a concussion. Philip Crum spent the rest of 2001 in hospitals and rehabilitation centers, finally returning home to Inez, Kentucky on December 31, 2001.

Both a Kentucky and a federal mine-regulatory agency investigated the accident. A federal mine-safety regulation imposed on Martin County Coal a duty to "strip[]" "[l]oose hazardous material . . . for a safe distance from the top of pit or highwalls" and otherwise secure "loose unconsolidated material." 30 C.F.R. § 77.1001. The Mine Safety and Health Administration of the United States Department of Labor issued Martin County Coal a citation, having found that "[l]oose unconsilidated [sic] rock and dirt was present above the roadway leading to the Maynard Fork workings in the area where [the accident] occurred from falling rock." The citation also stated that "[t]his condition existed for a distance of [about] 150–200 feet." Whoever filled out the citation form checked a box indicating that Martin County Coal's negligence was "moderate." An administrative law judge of the Federal Mine Safety and Health Review Commission approved a settlement in which Martin County Coal agreed to pay a civil penalty of $6,000 "for the alleged violation of mine safety regulations." *Sec'y of Labor, Mine Safety & Health Admin. v. Martin Cnty. Coal Corp.*, 2002 WL 31056752 (F.M.S.H.R.C.).

Then, in 2002, both Philip Crum and Crum Motor Sales sued Martin County Coal in Kentucky state court in Martin County. In their complaint, they alleged that Martin County Coal and its employees were negligent and grossly negligent in maintaining its mining operations. They alleged that Martin County Coal and its employees allowed the slope above the roadway where the accident occurred to become unstable, which caused the boulder to roll down the slope and crash into the pick-up truck, injuring Crum. Philip Crum sought damages for his injuries, and Crum Motor Sales sought

consequential damages, presumably in the form of lost income, stemming from Philip Crum's injuries and his inability to work. But in answering the complaint, Martin County Coal counterclaimed against Crum Motor Sales. The counterclaim asserted that neither Crum nor Crum Motor Sales could recover from Martin County Coal because Crum Motor Sales had entered into the 1997 indemnification agreement requiring Crum Motor Sales to "indemnify, defend and hold harmless" Martin County Coal from any claims that either Crum Motor Sales or its employees might bring against Martin County Coal.

Faced with Martin County Coal's counterclaim asserting that Crum Motor Sales would have to defend Martin County Coal against Philip Crum's lawsuit, Crum Motor Sales asked its insurer, Universal, to defend it in the counterclaim. Universal declined to do so, asserting that exclusions C and D of its policy with Crum Motor Sales applied. Martin County Coal entered into mediation with Philip Crum and Crum Motor Sales. Both Martin County Coal and Crum Motor Sales invited Universal to attend mediation, but Universal declined.

In 2008, after mediation, Crum Motor Sales and Martin County Coal then entered into a settlement agreement. Martin County Coal agreed—without admitting liability for the accident—to pay $3,650,000 to Philip Crum and Crum Motor Sales. In consideration for paying this amount, Crum Motor Sales agreed to do two things. First, it agreed to enter into an "agreed judgment" in Kentucky state court in Martin County on Martin County Coal's counterclaim, then still pending. The agreed judgment would be against Crum Motor Sales and in favor of Martin County Coal for $3,650,000 (plus costs and attorneys' fees) pursuant to the 1997 indemnification agreement. In other words, Crum Motor Sales agreed that the 1997 indemnification agreement made Crum Motor Sales liable to indemnify Martin County Coal against the $3.65 million settlement. Second, Crum Motor Sales agreed to assign to Martin County Coal any rights that Crum Motor Sales might have to recover money from Universal for Crum's injuries. In exchange, Martin County Coal agreed not to enforce the agreed judgment

against Crum Motor Sales. Martin County Coal also agreed to assume all risks associated with the assignment.

Later in 2008, Martin County Coal—now standing in the shoes of Crum Motor Sales—sued Universal, Crum Motor Sales' insurer, in Kentucky state court seeking the amount of Martin County Coal's settlement with Crum Motor Sales. Universal removed the case to federal court because of the diversity of the parties. The first question in the case was whether Universal had a duty to defend Crum Motor Sales. The district court held that, because Crum Motor Sales' dispute with Martin County Coal might have come within the coverage of Universal's policy, Universal did have a duty to defend Crum Motor Sales. Ultimately, Universal moved for summary judgment, arguing that it could avoid paying for Crum Motor Sales' settlement with Martin County Coal because Crum Motor Sales was not actually liable to Martin County Coal. The district court granted the motion because Martin County Coal failed to support its arguments with record evidence. Martin County Coal appealed, and Universal filed a protective cross-appeal.

We review de novo a district court's grant of summary judgment. *EEOC v. Prevo's Family Mkt., Inc.*, 135 F.3d 1089, 1093 (6th Cir. 1998). Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id*. The party moving for summary judgment bears the burden of demonstrating that there is an absence of evidence to support the nonmoving party's case. *Id*. Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Mosholder v. Barnhardt*, 679 F.3d 443, 448–49 (6th Cir. 2012) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); Fed. R. Civ. P. 56(e)). The court must determine either whether the evidence—viewed in the light most favorable to the nonmoving party—presents a sufficient disagreement to require submission to the fact-finder, or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Prevo's Family Mkt., Inc.*, 135 F.3d at 1093 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

On appeal, Martin County Coal argues that the district court erred in its June 1, 2011 order and opinion granting summary judgment to Universal and holding that Universal did not owe indemnity to Martin County Coal standing in the shoes of Crum Motor Sales. The district court held that Universal did not owe indemnity to Martin County Coal because Crum Motor Sales was not actually legally liable to Martin County Coal. Martin County Coal argues that Kentucky law does not require insureds, like Crum Motor Sales to prove that they were actually legally liable for a settlement before compelling an insurer, like Universal, to indemnify the insured against the settlement.

Martin County Coal is wrong. Under Kentucky law, an insured who has paid a settlement to a third party must prove that it could have been legally compelled to pay the settlement before the insured can get indemnity from its insurer. The duty to indemnify, under Kentucky law, "only arises when there is an actual basis for the insured's liability to a third party." *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co., Inc.*, 598 F.3d 257, 269 (6th Cir. 2010) (citing *James Graham Bround Found, Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279–80 (Ky. 1991); *Ky. Sch. Bds. Ins. Trust v. State Farm Mut. Ins.*, 907 F. Supp. 1036, 1038 (E.D.Ky. 1995)). Stated differently, if an insured settles with a third party, but the insured would not have been actually legally liable to the third party, then the insurer does not have to indemnify the insured for having paid a settlement to the third party. *Kentucky School Boards Insurance Trust v. State Farm Mutual Insurance*, 907 F.Supp. 1036 (E.D. Ky. 1995), and *Barnes v. Pennsylvania Casualty Company*, 208 S.W.2d 314 (Ky. 1948) illustrate Kentucky's actual-legal-liability rule.

In *Kentucky School Boards*, the Halls, a mother and her son, were struck by a car right after the son got off a school bus at a school-bus stop in Knott County, Kentucky. *Ky. Sch. Bds.*, 907 F. Supp. at 1037. The mother died, and her son was seriously injured. *Id.* The Halls filed a personal-injury action against the car's driver and the Knott County Board of Education. *Id.* The School Board had two insurance policies covering its vehicles: a general liability insurance policy with the Kentucky School Boards Insurance Trust and an automobile liability insurance policy with State Farm. *Id.* State Farm

denied that its policy covered the accident and refused to defend the School Board. *Id.* But the Trust did defend the School Board, and, without State Farm's consent, paid a settlement to the Halls. *Id.* Then, the Trust sued State Farm to recover all or part of the settlement amount as well as the costs of defending the School Board. *Id.*

The district court stated the rule that, under Kentucky law, the Trust, if it were to assert the School Board's rights against State Farm under the insurance contract, would have to present evidence of negligence and causation. *Id.* at 1037–38 (citing *Barnes*, 208 S.W.2d at 315; *Royal Indem. Co. v. May & Ball*, 300 S.W. 347 (Ky. 1927); *Interstate Cas. Co. v. Wallins Creek Coal Co.*, 176 S.W. 217 (Ky. 1915)). Applying *Barnes*, the district court in *Kentucky School Boards Insurance Trust* explained that "for [the Trust] to succeed on its subrogated claim, it "must show that the School Board had a legally enforceable claim against State Farm. That is, there must have been liability of the School Board to the Halls in the antecedent [personal-injury] case and such liability must have been covered by the State Farm policy." *Id.* at 1038 (footnote omitted).

In *Barnes*, one of Barnes' dump trucks collided with a bus. *Barnes*, 208 S.W.2d at 314. Barnes paid the bus's owners $800 to settle the matter. *Id.* Barnes then sued Pennsylvania Casualty Company for reimbursement of the $800. *Id.* The court did not even reach the question of whether or not Pennsylvania Casualty Company's insurance contract with Barnes "covered the dump truck . . . because its liability under that contract was conditioned upon the negligence of [Barnes], his agents or servants, in operating the truck." *Id.* at 315. The court stated the rule that "the liability imposed by law upon the insured is only that caused by his negligence." *Id.* (internal quotation marks omitted). So, "[i]f the accident was not the result of the negligence of [Barnes], his agents or servants, then the law imposes no liability upon him, and in turn, his insurance carrier is not liable." *Id.* Accordingly, "before [Pennsylvania Casualty Company] can be held liable under the contract of insurance it must be established that the accident was the result of [Barnes'] negligence." *Id.* (citing *Royal Indem.*, 300 S.W. at 349). In *Barnes*, the court observed, Barnes failed to introduce any evidence to show that the accident

between his dump truck and the bus resulted from the dump truck's driver's negligence. *Id.* The driver of the dump truck (Barnes' son) did not testify, nor did the bus's driver nor any other eyewitness. *Id.*

Here, the actual-legal-liability rule was incorporated into Crum Motor Sales' policy with Universal. The policy expressly provided that Universal would only be liable to indemnify Crum Motor Sales for "sums [Crum Motor Sales] *legally must pay as damages*." (emphasis added). Stated differently, Universal's duty to indemnify Crum Motor Sales was contingent upon Crum Motor Sales' actual liability to a third party such as Martin County Coal.

But Crum Motor Sales was not actually legally liable to Martin County Coal because the basis of this liability—the 1997 indemnity agreement between Martin County Coal and Crum Motor Sales—violates public policy and so is unenforceable. Under Kentucky state law, "[a]s a general rule, a party cannot contract away liability for damages caused by that party's failure to comply with a duty imposed by a safety statute." *Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp.*, 238 S.W.3d 644, 646 (Ky. 2007). Common sense tells us that the rationale behind this rule is that exculpatory contracts—like the 1997 indemnification agreement—allow a party like Martin County Coal to avoid liability for its own negligence, which reduces its incentive to comply with safety statutes. Kentucky law disfavors such exculpatory agreements; while "[a]n exculpatory contract for exemption from future liability for negligence, whether ordinary or gross, is not invalid per se . . . such contracts are disfavored[.]" *Id.* at 649 (quoting *Hargis v. Baize*, 168 S.W.3d 36, 47 (Ky. 2005)).

Here, the 1997 indemnification agreement allows Martin County Coal to escape liability for damages caused by Martin County Coal's violation of a safety statute, 30 C.F.R. § 77.1001, which imposed on Martin County Coal a duty to "strip[]" "[l]oose hazardous material . . . for a safe distance from the top of pit or highwalls" and otherwise secure "loose unconsolidated material." 30 C.F.R. § 77.1001. On appeal, Martin County Coal has not argued that the district court erred by holding that Martin County Coal sought to enforce its 1997 indemnity agreement against Crum Motor Sales to avoid

damages resulting from Martin County Coal's violation of this safety regulation. Indeed, the effect of the 1997 indemnification agreement is to shift liability imposed on it by 30 C.F.R. section 77.1001 to Crum Motor Sales, and by extension, to Universal. But Martin County Coal cannot do that. The rule of *Cumberland Valley Contractors* applies to this case: "'[a] party cannot contract away liability for damages caused by that party's failure to comply with a duty imposed by a safety statute.'" *Cumberland Valley Contractors*, 238 S.W.3d at 651 (quoting *Hargis*, 168 S.W.3d at 47). Martin County Coal cannot contract away liability for damages caused by its failure to comply with a duty imposed by a safety statute.

Furthermore, when Kentucky "courts have invalidated exculpatory clauses based upon a breach of a statutory duty or breach of a duty to the public at large, those agreements involved a major disparity in bargaining power between the parties." *Id.* at 653. As an example, the Kentucky Supreme Court looked at *Hargis*, in which a "significant disparity in bargaining positions existed between the two parties to that contract." *Id.* In *Hargis*, "[t]he plaintiff's decedent was an individual truck driver who worked as an independent contractor with the defendant owner of several sawmills." *Id.* (citing *Hargis*, 168 S.W.3d at 39). The Court further observed that "[p]resumably, the plaintiff's decedent in *Hargis* was required to sign the release at issue before he could deliver logs to the defendant's sawmill and, therefore, was 'compelled to submit to the stipulation.'" *Id.*

The Kentucky Supreme Court distinguished *Hargis* from the facts in *Cumberland Valley Contractors*, because, in *Cumberland Valley Contractors*, "sophisticated corporate entities negotiated the allocation of a jointly shared risk and expressly incorporated that risk allocation into a contract that neither of them was compelled to enter into to obtain a necessity, such as medical care or personal employment." *Id.* The Kentucky Supreme Court found "no suggestion that [Bell County Coal and Cumberland Valley Contractors] were not on 'a footing of equality[.]'" *Id.* at 654 (quoting *D.H. Davis Coal Co. v. Polland*, 62 N.E. 492, 495–96 (Ind. 1902)).

Rather, because Bell County Coal and Cumberland Valley Contractors were dealing at arm's length and upon an equal footing, the effect of the exculpatory clause in that case was not so much that Bell County Coal contracted against its own negligence as that Cumberland Valley Contractors agreed to alone bear all risks. *Id.* (quoting *Jones v. Hanna*, 814 S.W.2d 287, 289 (Ky. Ct. App. 1991)) (quotation marks omitted). Cumberland Valley received consideration for agreeing to bear the risks of flooding, and so the Court could not "'see that the public [was] in any wise affected by such a contract[.]'" *Id.* (quoting *Greenwich Ins. Co. v. Louisville & Nashville R.R. Co.*, 66 S.W. 411 (Ky. 1902)). So, "[g]iven that the [exculpatory clause] was negotiated as part of an arm's-length transaction between two business corporations with presumably equal bargaining power," the Court found "no compelling reason to disturb their written contract." *Id.*

As the Kentucky Supreme Court has more recently held, indemnification provisions "applied to defend against the indemnitee's own negligence, are not against public policy generally, but they are when agreed to by a party in a clearly inferior bargaining position." *Speedway Superamerica, LLC v. Erwin*, 250 S.W.3d 339, 344 (Ky. 2008).

Here, Crum Motor Sales was in a clearly inferior bargaining position in relation to Martin County Coal. Crum Motor Sales is the independent contractor in *Hargis*, not the sophisticated mining entity in *Cumberland Valley Contractors*. At the time of entering into the 1997 indemnification agreement, Martin County Coal was a wholly owned subsidiary of an out-of-state corporation, the A.T. Massey Coal Company, Inc., listed on the New York Stock Exchange. Crum Motor Sales was a nearly insolvent mom-and-pop wholly in-state company with fewer than ten employees. We therefore disagree with Martin County Coal's assertion that Crum Motor Sales "was a sophisticated business entity." There was a major disparity in bargaining power between Martin County Coal and Crum Motor Sales.

We infer that this disparity in bargaining power existed because Martin County Coal required that Crum Motor Sales sign the indemnity agreement, without bargaining

over it, before it would allow it to perform any work. Just as the sawmill owner in *Hargis* required the plaintiff's decedent to release from liability the sawmill owner before entering the premises, so did Martin County Coal require Crum Motor Sales to sign the 1997 indemnification agreement before entering Martin County Coal's premises to perform repair work. Testimony in the record of Martin County Coal's former president and Massey Energy's former corporate counsel shows that Martin County Coal simply required the indemnity agreement and did not allow negotiations over its terms.

Dennis Hatfield, Martin County Coal's president from 1994 to 2001, who testified on behalf of Martin County Coal pursuant to Federal Rule of Civil Procedure 30(b)(6), stated that Martin County Coal, during the time of his presidency, required, as a company policy, vendors coming on the property to provide services both to have insurance and to sign an indemnification agreement. When asked whether anyone who wanted to enter Martin County Coal's property was able to persuade the company to modify or vary the terms of the release, Hatfield responded no, and that the 1997 indemnification agreement was a "standard agreement" which Martin County Coal "required of all parties."

Another Rule 30(b)(6) witness, John Poma, who served as corporate counsel for Massey Energy Company, Martin County Coal's parent company, testified that the 1997 indemnification agreement "was a requirement for work to be done for the property at Martin County or any of our other subsidiaries[,]" and that Crum Motor Sales "just needed to agree that they were going to come onto our property, that if anything happened they would agree to indemnify and hold us harmless." Poma further testified that the 1997 indemnification agreement was not customized in any way, other than the entering of the names Martin County Coal and Crum Motor Sales. Poma said that "[t]he communications with any of our customers coming onto [the] property would be if you're going to come onto [the] property, you need to sign the agreement as a requirement of doing business."

And, in answering interrogatories in Philip Crum's personal injury case, Crum Motor Sales wrote that no negotiations were conducted for the 1997 indemnification

agreement, which Martin County Coal required Crum Motor Sales to accept before it could conduct business with Martin County Coal.

So, contrary to Martin County Coal's assertion in its brief, there is evidence in the record that Martin County Coal forced Crum Motor Sales to enter into the 1997 indemnity agreement to get Martin County Coal's business. The 1997 indemnification agreement was a take-it-or-leave-it contract.

Because the 1997 indemnification agreement was bargained by parties in clearly unequal positions, and because it effectively contracted away liability for damages caused by Martin County Coal's failure to comply with a duty imposed by a federal mine-safety regulation, the 1997 indemnification is, under Kentucky law, void as against public policy.

Therefore, Crum Motor Sales was not actually legally liable to Martin County Coal on Martin County Coal's contractual-indemnity counterclaim in the underlying case. As a result, the indemnity claim that Crum Motor Sales assigned to Martin County Coal—and which Martin County Coal is now asserting against Universal—fails as a matter of law. Crum Motor Sales was not actually legally liable for the $3.65 million that it agreed to pay Martin County Coal under the settlement and agreed judgment.

Universal has filed a protective cross-appeal of the district court's January 4, 2010 order granting summary judgment against it and in favor of Martin County Coal and holding that Universal owed Crum Motor Sales a duty to defend it against Martin County Coal's counterclaim in Kentucky state court based on the 1997 indemnification agreement. We have allowed parties to bring protective cross-appeals to be considered in the event that the appellant, here Martin County Coal, succeeds in its own appeal. *Rice v. Ohio Dep't of Transp.*, 14 F.3d 1133 (6th Cir. 1994); *Avery Prods. Corp. v. Morgan Adhesives Co.*, 496 F.2d 254 (6th Cir. 1974). As we have said, "[a] protective cross-appeal differs from a cross-appeal because the protective cross-appellant is not necessarily dissatisfied with the judgment. Appellate courts generally allow protective cross-appeals but do not consider them unless it is appropriate to do so after the disposition of the appeal." *Anderson v. Roberson*, 90 F. App'x 886, 888 (6th Cir.

2004)(unpublished) (internal quotations and citations omitted) (quoting *Hartman v. Duffey*, 19 F.3d 1459, 1465 (D.C. Cir. 1994)).

Here, because we affirm the district court's June 1, 2011 order, and agree that Crum Motor Sales was not actually liable to Martin County Coal so that Universal had no duty to indemnify Martin County Coal standing in the shoes of Crum Motor Sales, we need not address Universal's protective cross appeal of the district court's January 4, 2010 order concluding that Universal breached its duty to defend Crum Motor Sales.

For the foregoing reasons, we **AFFIRM** the district court's judgment.

———————————

**DISSENT**

———————————

ROGERS, J., Circuit Judge, dissenting.   This case involves a contractor's agreement with a mine operator to indemnify for, and obtain insurance covering, injury to the contractor's employees while on the mine operator's land.  A terrible accident resulting from a regulatory violation by the mine operator gravely injured an employee of the contractor.  The employee has been compensated with $3.6 million from the mine operator.  The contractor, it turns out, had complied with its contractual obligation and obtained the insurance.  The issue on appeal is whether the mining company, having paid the compensation, can ultimately recover over on the insurance that it successfully required the contractor to obtain.  There is nothing in Kentucky public policy that prohibits such an indemnity resulting from a contract between two employers, where the arrangement could in no way have led to the employee's not recovering.  This is not a case where the mine contractually required the employee to bear the risk as a condition of employment, in which case there might have been no recovery absent a public policy against such a contract.  To extend this public policy to invalidate contracts requiring that other parties obtain insurance is not consistent with the very idea that entities can obtain insurance covering liability for their own negligence.  The winner on this appeal is not the small company that faithfully obtained the insurance that it contracted to obtain, but the insurance company that will not have to pay for losses that it accepted premiums to cover.  I therefore respectfully dissent.

For the reasons given by the district court, Universal owed Crum Motor Sales a contractual duty to defend, which it breached.  Moreover, I agree with the majority that Universal should not have to pay if Crum Motor Sales had no obligation to indemnify Martin County Coal.  Under Kentucky law and the facts of this case, however, Crum Motor Sales did have such an obligation.

Kentucky law generally counsels against invalidating contracts.  It is true that an agreement that exempts a party from liability for future negligence is "disfavored and

. . . strictly construed against the [party] relying upon [it]." *Hargis v. Baize*, 168 S.W.3d 36, 47 (Ky. 2005); *see also Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp.*, 238 S.W.3d 644, 650 (Ky. 2007). Such contracts must be unmistakably clear as to the liabilities released and assumed, and the contract may be relied upon only for harms that were "clearly within the contemplation of the [parties]." *Hargis*, 168 S.W.3d at 47.

But there is of course no contract in this case that exempts Martin County Coal from liability. The injured employee received $3.6 million and the resolution of this appeal in no way affects that payment one way or another. The plaintiff in *Hargis* was an individual, although to be sure he was an independent contractor for workers' compensation purposes. The release in *Hargis* made clear that the lumber company that caused his injury was forever held harmless for any bodily injury sustained by an individual worker. *Id.* at 46-47. This is a classic exemption from liability and precisely the type of pre-injury release that courts often invalidate as against public policy. Indeed, the commentary to the Restatement (Second) of Torts, § 496B, relied upon by *Hargis*, 168 S.W.2d at 47, states:

> Where the defendant and the plaintiff are employer and employee, and the agreement relates to injury to the employee in the course of his employment, the courts are generally agreed that it will not be given effect. The basis for such a result usually is stated to be the disparity in bargaining power and the economic necessity which forces the employee to accept the employer's terms, with the general policy of the law which protects him against the employer's negligence and against unreasonable contracts of employment.

Restatement (Second) of Torts § 496B cmt.f (1965). It was a small jump for the Kentucky Supreme Court to extend this widely accepted public policy doctrine to individuals who work for employers but who are technically independent contractors. In each case, without the public policy exception there would be no recovery for the negligence—an untoward result.

This public policy does not logically extend to prohibiting an employer from obtaining insurance to cover its liability for negligence. That would be an absurd

reading of *Hargis*. Indeed, public policy arguably supports obtaining insurance, so that injured workers get compensation. The coal mining company in this case insisted that a contracting company obtain insurance so as to indemnify the mining company for the compensation that it must pay to the individual. This is a commercial transaction designed to shift the cost of insurance, not a release to avoid compensation to the injured worker. Particularly in this case, where the contractor was able to obtain the insurance as part of its cost of doing business, it makes no sense to say that public policy protects the contractor's insurance company from liability.

This reasoning is supported *a fortiori* by the Kentucky Supreme Court's later case of *Cumberland Valley Contractors, Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644 (Ky. 2007). That case involved *economic* harm resulting to a mine operator from the landowner's violation of a safety regulation. The court upheld as valid an exculpatory clause in the mining contract. The case in other words involved *no liability* to the injured party, not who was going to have to pay or who was going to have to obtain insurance. The court still held that the exculpatory clause was enforceable. To invalidate a contractual provision, the court required a major disparity in bargaining power. The court distinguished the situation in *Hargis* where "[t]he plaintiff's decedent was an individual truck driver who worked as an independent contractor with the defendant owner of several sawmills," from that in *Cumberland Valley*, in which "sophisticated corporate entities negotiated the allocation of a jointly shared risk," and neither party "was compelled to enter into [a contract] to obtain a necessity, such as medical care or personal employment." *Id.* at 653. I do not assume that a family-run, rural business is of necessity one that must be viewed as unsophisticated, but even if so, Crum Motor Sales was clearly not an individual and there was no necessity such as "medical care or personal employment." Thus even if the contractual provision in this case could be described as an exculpatory clause, which it could not, the instant case appears much closer to *Cumberland Valley* than to *Hargis*.

But the contract was not an "exculpatory clause." It was an insurance obligation clause, not exculpating the coal operator, but agreeing to obtain insurance to indemnify

him. And despite any asserted lack of sophistication, Crum Motor Sales was able to obtain the required insurance from Universal, an entity that in turn certainly does not lack in sophistication.

The later decision of the Court of Appeals of Kentucky in *Speedway Superamerica, LLC v. Erwin*, 250 S.W.3d 339 (Ky. Ct. App. 2008), is like *Hargis* and similarly does not support Universal. The court in *Speedway* invalidated an indemnification provision signed by a 55-year-old man with an eighth grade education who was injured at work. *Id.* at 340. The court said the provision was analytically indistinguishable from an exculpatory, pre-injury release. *Id.* at 341. As in *Hargis*, but unlike in the instant case, validating the contractual provision would have precluded recovery by the injured individual.

There is little harm to the public where these risks are adequately insured against. Here, Crum Motor Sales was required to provide the insurance for mine-site accidents befalling its own employees, and Crum Motor Sales did indeed procure such insurance. A fair resolution of this case would require Universal to accept responsibility under its policy, and public policy certainly does not preclude it. I would reverse and remand.

Finally, I would dismiss the cross-appeal for lack of appellate jurisdiction. Parties may not cross-appeal judgments where they seek no change to the judgment appealed from. *See Wheeler v. City of Lansing*, 660 F.3d 931, 939–40 (6th Cir. 2011). Counsel for Universal may of course defend their favorable judgment on grounds rejected by the district court, but they are not entitled under the appellate rules to file an extra brief to do so. Treating Universal's arguments on cross-appeal as arguments supporting affirmance on grounds rejected by the district court, I would reject those arguments for the reasons given by the district court.