## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 24 2017, 11:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Nicholas A. Cummins
David E. Prewitt
Bennett, Bricklin & Saltzburg, LLC
Philadelphia, Pennsylvania

Christine D. Campbell
Schiller Barnes Maloney PLLC
Louisville, Kentucky

ATTORNEYS FOR APPELLEE
TIMKEN ALCOR AEROSPACE
TECHNOLOGIES, INC.

Mark D. Gerth
Pfenne P. Cantrell
Aerospace Technologies, Inc.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
HONAKER AVIATION, INC.

Douglas B. Bates
Chelsea R. Stanley
Stites & Harbison PLLC
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE
JET ACCESS AVIATION, LLC

Matthew W. Melton
Richard L. Norris
Norris Choplin Schroeder LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| Aviation Consultants U.S., Inc., | February 24, 2017 |
| --- | --- |

Aviation Consultants U.S., Inc.,

*Appellant-Plaintiff,*

v.

Timken Alcor Aerospace Technologies, Inc.; Honaker Aviation, Inc.; and Jet Access Aviation, LLC,

*Appellees-Defendants*

February 24, 2017

Court of Appeals Case No. 10A04-1609-CT-2230

Appeal from the Clark Circuit Court

The Honorable Roger L. Duvall, Special Judge

Trial Court Cause No. 10C01-1410-CT-147

**Baker, Judge.**

[1] After an airplane owned by Aviation Consultants U.S., Inc. (ACI), got into an accident and sustained significant damage as a result, ACI sued multiple entities for alleged negligence and other claims, including Timken Alcor Aerospace Technologies, Inc. (Timken), Honaker Aviation, Inc. (Honaker), and Jet Access Aviation, LLC (Jet Access). The trial court granted summary judgment in favor of Timken, Honaker, and Jet Access, and ACI now appeals. Finding no issues of material fact and that the appellees are entitled to judgment as a matter of law, we affirm.

## Facts

[2] During the relevant period of time, ACI owned and operated a Beechcraft King Air 200 aircraft (the Aircraft), which was equipped with two Pratt & Whitney (Pratt) engines. ACI intended to use the Aircraft to conduct commercial air charter flights. A Part 135 Federal Aviation Regulations (FAR) Certificate is a

requirement to conduct commercial charter flights, but ACI did not hold a FAR Certificate. As a result, ACI had to affiliate with Jet Access, which was a holder of a FAR Certificate. To that end, ACI and Jet Access entered into an agreement (the Jet Access Agreement),[1] pursuant to which ACI could conduct commercial air charter flights under Jet Access's FAR Certificate. The Jet Access Agreement provided that Honaker, a Jet Access affiliated entity,[2] would perform certain work on the Aircraft.

[3]  In Spring 2012, ACI determined that the engines (the Original Engines) in the Aircraft were approaching the mandatory overhaul time. ACI solicited bids for the overhaul work; Timken was ultimately selected to do the work. As specified by the agreement between ACI and Timken (the Timken Agreement),[3] Timken arranged to lease interim replacement engines (the Leased Engines) to ACI while the Original Engines were being overhauled and serviced. Specifically, Timken arranged for ACI to fly the Aircraft to Honaker in Clark County to have the Original Engines removed and the Leased Engines installed. On June 8, 2012, Honaker removed the Original Engines and installed the Leased Engines. The Leased Engines are also Pratt engines.

[4]  On October 20, 2012, ACI conducted a commercial air charter flight on the Aircraft to Nova Scotia, Canada. The Aircraft was operating with the Leased

---

[1] Pursuant to the contract, Kentucky law applies to the Jet Access Agreement.

[2] Honaker and Jet Access have a common business address and common management/ownership.

[3] Pursuant to the contract, Arizona law applies to the Timken Agreement.

Engines at that time. When attempting to depart from the Canadian airport, the right engine on the Aircraft failed during the takeoff phase. The flight crew attempted to abort the takeoff and bring the Aircraft to a stop on the remaining runway, but was unable to do so and sustained a collapse of the nose gear and other damage to the Aircraft as a result.

[5]  On June 13, 2013, Timken filed a lawsuit in Arizona against ACI (the Arizona Lawsuit). In the Arizona Lawsuit, Timken sought payment for the overhaul of the Original Engines and for the alleged value of the Leased Engines. On November 7, 2013, Timken and ACI entered into a settlement agreement (the Settlement Agreement) that acknowledged two pending lawsuits[4] and settled for the sum of $450,000. The Settlement Agreement explicitly exempts ACI's claims for damages arising from the quality of work performed by Timken on the Original or Leased Engines and any tort or product liability claims for damages arising from the alleged engine failure of the Leased Engines. Paragraph seventeen of the Settlement Agreement provides as follows:

> The [Settlement] Agreement constitutes a single, integrated written contract expressing the entire settlement of the Arizona Parties with respect to the Timken Alcor Released Claims and for the ACI Released Claims. All prior verbal and written communications, negotiations, and agreements relating to the settlement of those claims are superseded by the Agreement.

---

[4] ACI had also filed a lawsuit against Timken in Pennsylvania, but that claim was dismissed for lack of personal jurisdiction.

Appellant's App. p. 115-16.

[6]     On October 17, 2014, ACI filed the instant lawsuit in Indiana to recover its damages from the accident. All of its claims stem from this essential allegation: the Leased Engines were defective and had not been properly serviced, maintained, inspected, or certified airworthy by Timken, Honaker, and Jet Access. Against Timken, ACI filed claims for strict liability, negligence, breach of implied and express warranties, fraud, and misrepresentation. Against Pratt, ACI filed claims for strict liability, negligence, and breach of express and implied warranties.[5] Against Honaker, ACI filed a claim for negligence. Against Jet Access, ACI filed a claim for negligence. ACI sought incidental and consequential damages totaling approximately $2.4 million.

[7]     Timken filed a motion for partial summary judgment (relating solely to the issue of whether ACI could recover consequential or incidental damages) and Honaker and Jet Access each filed motions for summary judgment. Following briefing and a hearing, on September 2, 2016, the trial court granted the defendants' motions. On September 9, 2016, ACI filed a motion to modify the order with respect to Timken, requesting that the trial court enter an order of full summary judgment in Timken's favor. The trial court granted the motion. ACI now appeals.

---

[5] Pratt was dismissed on August 12, 2016, and is not a party to this appeal.

# Discussion and Decision

## I. Standard of Review

Our standard of review on summary judgment is well established:

> We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp,* 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

## II. Timken

ACI makes two arguments in support of its contention that the trial court should not have granted summary judgment in Timken's favor: (1) the Settlement Agreement supersedes the Timken Agreement, such that the hold harmless language in the Timken Agreement no longer has any effect; and (2) even if the Timken Agreement still applies, there is an issue of fact preventing summary judgment.

## A. The Settlement Agreement vs. The Timken Agreement

[10] The Timken Agreement contains the following language providing that Timken was not responsible for any consequential or incidental damages:

> A. [ACI] shall be liable for and shall indemnify and hold [Timken] harmless from and against all loss and damages to the Leased Engine, which occurs during [ACI's] possession or control of the Leased Engine, except for normal wear, and damage to the Leased Engine by reason of [Timken's] sole negligence. . . .

> B. [ACI] shall indemnify and hold [Timken] harmless from and against any and all liability, costs, expenses, claims or demands by [ACI] or any third party of any nature, whatsoever, except such liability resulting from [Timken's] sole negligence. . . .

> C. As further consideration for this Agreement, *it is specifically agreed that [Timken] shall not be liable for any special consequential, incidental or direct damages including but not limited to any damages arising out of loss of use of the property, however occasioned, whether or not resulting from [Timken's] imputed negligence*.

Timken App. Vol. II p. 56 (emphasis added). The trial court found that this language is fatal to ACI's claims against Timken. With respect to the Settlement Agreement, the trial court held as follows:

> [The Arizona Lawsuit] was settle[d] and the parties executed a release. That release excepted out [ACI's] claim[s] that are the basis of this current case. The Court believes that [the] release in

the Arizona case did not void the contractual provisions of the lease. The purpose of the Arizona release was to resolve Defendant Timken's claim for money under the lease while at the same time allow [ACI] and . . . Timken to litigate the issues under the lease concerning the representations and performance of the leased engine.

Appellant's App. p. 38.

[11] ACI directs our attention to the parol evidence rule, which provides as follows: when a contract contains an integration clause—a written expression of the parties' intent that the contract represents the complete and final agreement between them—then any evidence of prior or contemporaneous written expressions that would contradict that agreement is inadmissible. *Pinnacle Peak Developers v. TRW Inv. Corp.*, 631 P.2d 540, 544-45 (Ariz. 1980). It is also true, however, that a court is to give the words of a contract their plain and common sense meaning. *Aztar Corp. v. U.S. Fire Ins. Co.*, 224 P.3d 960, 966 (Ariz. 2010).

[12] The Settlement Agreement's integration clause reads as follows:

> The [Settlement] Agreement constitutes a single, integrated written contract expressing the entire settlement of the Arizona Parties with respect to the Timken Alcor Released Claims and for the ACI Released Claims. All prior verbal and written communications, negotiations, and agreements relating to the settlement of those claims are superseded by the Agreement.

Appellant's App. p. 115-16. The plain language of this clause clearly indicates that it applies solely to the "released claims" covered by the Settlement Agreement. Indeed, the Settlement Agreement explicitly exempts the claims

filed by ACI in the Indiana lawsuit. We simply cannot conclude that the Indiana claims "relate to" the settlement of the claims covered by the Settlement Agreement. Under these circumstances, we believe that the trial court correctly concluded that the Settlement Agreement does not supersede the Timken Agreement with respect to the claims at issue in the instant litigation.

## B. Issue of Fact

[13] ACI argues that, even if the original Timken Agreement applies, there is an issue of fact rendering summary judgment improper. The plain language of the Timken Agreement's hold harmless provision provides that Timken is not liable for any special consequential, incidental, or direct damages, whether or not resulting from Timken's negligence.

[14] As a general rule, Arizona disfavors contractual provisions by which one party seeks to immunize itself against the consequences of its own torts. *Salt River Project Agric. Improvement and Power Dist. v. Westinghouse Elec. Corp.*, 694 P.2d 198, 214 (Ariz. 1984), *abrogated on other grounds by Phelps v. Firebird Raceway, Inc.*, 111 P.3d 1003 (Ariz. 2005). But absent any public policy to the contrary, Arizona allows parties to agree in advance that one party shall not be liable to the other for negligence, rationalizing that, despite the general disfavor of such provisions, there is no public policy impediment if the parties bargained for the limitation. *Id.* The *Salt River* Court also noted that there must be a factual showing that "the provision was part of the bargaining and negotiating process," and that the parties should be allowed to present evidence on the

following: "1) the parties' actual bargaining strength; 2) the existence of any bargaining regarding product specifications; and 3) the existence of any actual bargaining or negotiation concerning the allocation of risks and limitation of liability." *Id.* at 215. ACI argues that its claim against Timken survives summary judgment because the parties are allowed to present evidence as to whether the hold harmless provision in the Timken Agreement was the product of an arm's length negotiation between two similarly situated entities.

[15] The evidence designated by Timken[6] in support of its partial summary judgment motion establishes the following:

- Timken and ACI are both commercial entities. Timken App. p. 17.
- ACI engaged in discussions with Timken, as well as other third-party overhaul corporations, regarding the overhaul of the Original Engines. *Id.* at 20.
- ACI and Timken engaged in negotiations leading up to the selection of Timken by ACI to overhaul the engines. *Id.* at 21.
- These negotiations took place between ACI and Tony Rossi, an agent of Timken. Ken Feltrop, President of ACI, signed the Timken Agreement on behalf of ACI. *Id.* at 57.
- The result of the negotiations was a complex Lease Agreement including multiple appendices and spanning four pages. The value of the agreement totaled a minimum of $5,000 per month and ACI was required to purchase an insurance policy worth $325,000. *Id.* at 54-57.

---

[6] Timken frequently cites to a deposition of the president of ACI in its brief, but this evidence was not timely designated to the trial court and we will not consider it herein.

Nothing in this evidence suggests a lack of meaningful negotiations or a disparity in the parties' bargaining strength and abilities. ACI, a commercial entity, sought bids from Timken and its competitors, to perform an extensive and complicated engine overhaul. Throughout the process, ACI's president and a representative of Timken were engaged in negotiations. Timken did not present ACI with a form contract on a take it or leave it basis; the contract was detailed, specific, and initialed by ACI's president on each page. There is no evidence in the record that creates an issue of fact regarding the parties' negotiations or their respective bargaining strength. Under these circumstances, the trial court did not err by granting summary judgment in Timken's favor.

## III. Honaker and Jet Access

[16] ACI next argues that the trial court improperly granted summary judgment in favor of Honaker and Jet Access. ACI's primary allegation against Honaker is that it negligently performed work on the Aircraft; its primary allegation against Jet Access is that it failed in its duty to properly certify the condition of the Aircraft and that it knew or should have known that the Aircraft was not in airworthy condition and that the engines were on the verge of failure.

[17] The Jet Access Agreement contains the following indemnification provision:

> [ACI] and [Jet Access] (as applicable, the "Indemnifying Party")
> shall indemnify and hold harmless each other . . . *and all affiliated*
> *and subsidiary companies* and organizations . . . ("Indemnified
> Parties"), except to the extent due to the gross negligence or

willful misconduct[7] of such Indemnified Parties, from and against any and all loss, damage, liability, and cost including but not limited to attorneys' fees and legal costs, arising from damage or destruction of property . . . . which are in any manner whatsoever related to the performance or failure to perform under this Agreement by the Indemnifying Party, and to which the insurance required under Section 9 does not apply. . . .

. . . NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR SPECIAL, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES . . . EVEN IF THAT PARTY HAD BEEN ADVISED, KNEW OR SHOULD HAVE KNOWN OF THE POSSIBLITY OF SUCH DAMAGES.

Appellant's App. Vol. II p. 94 (capitalization original; italicized emphasis added).  We can only conclude that the plain language of this agreement means that neither Jet Access nor Honaker, as an affiliated entity of Jet Access, are liable for the alleged acts of negligence.  ACI argues, however, that this provision is not enforceable in general or by Honaker.

## A.   Enforceability of Indemnification Provision in General

[18]   First, ACI points out that the original version of the Jet Access Agreement that was signed by the parties has been lost.  The version of the agreement in the record is an unsigned copy of that agreement.  ACI argues, therefore, that we

---

[7] ACI did not allege gross negligence or willful misconduct against Honaker or Jet Access.

should not even consider the above indemnification provision. Both Jet Access and Honaker, however, designated the affidavit of Shawn Honaker (founder and Chief Executive Officer of Jet Access) in support of their summary judgment motions; the affidavit states that the version of the Jet Access Agreement in the record is "a true, accurate, and complete, unsigned copy of the . . . Agreement entered into between Jet Access and ACI." Joint Appellees' App. Vol. II p. 52, 100. ACI designated no evidence whatsoever in its opposition to Honaker's summary judgment motion, nor does it make any serious argument that the unsigned version of this document varies in any way from the original. Under these circumstances, we can only conclude that the unsigned version of the Jet Access Agreement is a true and accurate copy of the original agreement. Consequently, the indemnification provision stands.

[19] Next, ACI argues that the indemnification provision is unenforceable because "Kentucky agreements to indemnify against an indemnitee's own negligence are not valid." Appellant's Br. p. 12. We disagree, as "Kentucky courts have long upheld exculpatory clauses in arm's length transactions between sophisticated parties with equal bargaining power and allowed such parties to bargain against liability for their own negligence . . . ." *Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp.*, 238 S.W.3d 644, 654 (Ky. 2007). The case cited by ACI in support of this contention does not apply here because it held an indemnity contract with an uneducated person void under public policy due to the person's inferior bargaining position. *Speedway SuperAmerica, LLC v. Erwin*, 250 S.W.3d 339, 344 (Ky. Ct. App. 2008). In the case before us, on the

other hand, nothing in the record suggests that this transaction was anything other than an arm's length transaction between sophisticated commercial parties with equal bargaining power.

[20] ACI also seems to suggest, without elaboration, that the indemnification provision is unenforceable under the standard announced in *Hargis v. Baize*, 168 S.W.3d 36, 47 (Ky. 2005). Under *Hargis*, an exculpatory clause is valid only if:

> (1) it explicitly expresses an intention to exonerate by using the word "negligence;" or (2) it clearly and specifically indicates an intent to release a party from liability for a personal injury caused by that party's own conduct; or (3) protection against negligence is the only reasonable construction of the contract language; or (4) the hazard experienced was clearly within the contemplation of the provision.

*Id.* at 47. The indemnification provision in the Jet Access Agreement explicitly confirms an intent on the part of the signatories to be indemnified and held harmless for their own negligence; moreover, protection against negligence is the only reasonable construction of this contractual language. Consequently, *Hargis* does not prevent enforcement of the indemnification provision in the Jet Access Agreement.

## B. Honaker's Right to Enforce Indemnification Provision

[21] It is undisputed that Honaker is an affiliated entity of Jet Access. *Id.* at 45. It is likewise undisputed that Honaker performed the work in question in

furtherance of the Jet Access Agreement. The plain language of the agreement, therefore, means that Honaker is not liable as a matter of law.

[22] ACI also argues that because Honaker was not named in the Jet Access Agreement, it should not be permitted to enforce it. We disagree. ACI's own complaint concedes that Honaker is an affiliated entity of Jet Access. Appellant's App. Vol. II p. 94. Honaker's designated affidavit likewise confirmed that Honaker is affiliated with Jet Access. Joint Appellees' App. Vol. II p. 52, 100. And "affiliated" companies are explicitly protected by the indemnification provision. Therefore, Honaker is not a "stranger" to the contract and unquestionably has the right to enforce this provision of the Jet Access Agreement.[8]

[23] In sum, we find that the indemnification provision in the Jet Access Agreement clearly states that neither Jet Access nor Honaker are liable for the claims alleged by ACI in this litigation. There are no issues of material fact and both Jet Access and Honaker are entitled to judgment as a matter of law.

[24] The judgment of the trial court is affirmed.

Mathias, J., and Pyle, J., concur.

---

[8] ACI also alleges, with no citation to the record, that some of the work that Honaker performed occurred before the Jet Access Agreement was signed. With no evidence supporting this argument, it is simply an unsupported allegation that does not undercut the trial court's order.